NICHOLAS LIBERTINI, JR., v. THE STATE.

No. 23072. Delivered February 21, 1945.
Rehearing Denied March 28, 1945.

The opinion states the case.

*Leonard Brown,* of San Antonio, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is murder. The punishment assessed is confinement in the state penitentiary for a term of five years.

The record discloses that on the night in question, appellant and Joe Villegas went to a night club located at 117 North Flores Street in the City of San Antonio, where they engaged in playing a game of pool, and each also drank two bottles of beer. From there they started toward home. Just after they had crossed the street appellant became involved in a fight with some soldiers in which he came out second best. It seems that the soldiers knocked him down and then left. Appellant's companion assisted him to his feet. From there he went to his apartment, procured a pistol, returned to the night club and fired four or five shots which caused quite a stampede by the musicians and some of the patrons of the place. It appears that he noticed Nick Kapsimales, Jr., going from the telephone booth to a small room and close the door behind him, whereupon appellant went to the door and sought to push it open. Failing in his attempt to open it, he shot through it and fatally injured the young man. When appellant was shooting promiscuously in all directions of the place, some of the men struck him with bottles, some with chairs and others cut and stabbed him, as a result of which he was "well worked over" and was in a serious condition. He was taken to the Robert B. Green Hospital, where he received medical treatment.

On his trial appellant testified in his own behalf and stated that he had no recollection of shooting at anyone or doing any shooting at the night club; that a few days after the alleged occurrence his wife, on one of her visits, told him what had happened and that he had killed Nick Kapsimales, Jr.

Dr. J. A. McIntosh testified on behalf of the defendant that it was his opinion from the facts testified to by some of the witnesses that appellant, in the fight with the soldiers, received several blows on his head and face, and when knocked down, received a concusion of the brain, and as a result thereof he became temporarily insane and was not responsible for his acts.

Appellant brings forward two bills of exception relating to the admission of certain evidence, and nine objections to the court's charge. We will consider and dispose of them in their numerical order. However, the bills of exception relating to the admission of evidence are in question and answer form without any certificate from the trial court that it was necessary that they be in such form in order to fully present the matters complained of. Hence these bills cannot be considered by us. See Green v. State, 160 S. W. (2d) 940; Garza et al v. State, 122 Tex. Cr. R. 413; Tubb v. State, 139 Tex. Cr. R. 621, and authorities there cited.

The appellant's objections to the court's charge, which will be hereinafter discussed, were timely made and will be disposed of in the order in which they are presented.

By Objection No. 1 he complains of the court's charge because the court instructed the jury relative to the law of temporary insanity produced by the recent use of ardent spirits. His objection thereto was that the issue was not raised by any evidence. The trial court, in qualifying the bill, refers to pages 11 and 12 of the statement of facts which he contends justified a charge thereon. An examination of the evidence as there recorded reveals that Manuel Arcas testified that he was at the night club in question prior to the alleged homicide; that he (Arcas), Joe Villegas and appellant each drank two bottles of beer while there; that appellant was feeling good. When asked if appellant was drunk Arcas replied: "I can't say yes, only he was, you know." Joe Villegas testified that he and appellant were at the night club mentioned; that he had seen drunken men and had been with them; that from his experience with drunken men he would say that appellant was "feeling good"; that he could not give Villegas a good game of pool. "When he started upstairs he was staggering." "When he started up toward the saloon he was staggering a little bit." It occurs to us that the evidence raises the issue. We have said many times that when an issue is raised an instruction relative to the law on the subject should be given.

By Objection No. 2 he complains of the following portion of

the court's charge: "But if you have a reasonable doubt as to whether such temporary insanity, if any, caused by the immoderate use of intoxicating liquor has been shown by a preponderance of the evidence, you will give such defendant the benefit of such doubt."

His objection to such charge is that it is confusing and not clear whether it is confined to temporary insanity caused by the voluntary use of ardent spirits or temporary traumatic insanity caused by a blow. In construing the charge, the entire paragraph must be taken into consideration, and when that is done there is no doubt that it applied to temporary insanity produced by the recent use of intoxicating liquor, because it is not subject to any other reasonable construction.

By his Objection No. 3 he complains of the court's charge wherein he instructed the jury relative to the law on the issue of temporary insanity produced by a blow on the head and face. His chief objection to the charge was that the court instructed the jury that the burden was on the defendant to establish his plea of traumatic insanity by a preponderance of the evidence. Such is the law of this state. Consequently the charge was not subject to the objection urged thereto.

By his Objection No. 4 he complains because the court instructed the jury that the burden was on the defendant to prove his insanity by a preponderance of the evidence but failed to charge that he need not prove it beyond a reasonable doubt. We see no merit in his contention. "Preponderance," in legal phraseology, means by the greater weight of evidence. The jury, being men of average intelligence, could not have been misled by the charge. We therefore overrule his contention. '

By his Objection No. 5 he complains of the action of the trial court in declining to instruct the jury that if the defendant shot the deceased merely to frighten him or shot through the door merely to frighten or to compel him to leave the hall, he would not be guilty of murder. We see no merit in his contention. There was not any evidence in the case which raised that issue.

By his Objection No. 6 he complains of the court's charge on the ground that the court declined to charge the jury on the issue of negligent homicide and aggravated assault. There is no merit in this bill for the reason that the issues of negligent homicide and aggravated assault were not raised by any evidence adduced on the trial.

By his Objection No. 7 he complains because the court failed to instruct the jury as to the legal effect of the defendant shooting the deceased if he labored under the delusion that the deceased was the person who had recently assaulted him. This issue was not raised by the evidence. Consequently the court was eminently correct in declining to charge thereon.

Objections Nos. 10 and 11 to the court's charge have been carefully considered by us and are deemed to be without merit.

Finding no reversible error in the record, the judgment of the trial court is in all things affirmed.

The foregong opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON MOTION FOR REHEARING.

GRAVES, Judge.

Appellant contends that we were in error wherein we upheld the trial court in its charge to the jury relative to the preponderance of the testimony concerning appellant's defense of traumatic insanity. In the court's charge it was provided that such insanity should be proven by a preponderance of the testimony, appellant herein contending that a sufficient quantum of proof would be met if the proof of such only create in the minds of the jury a reasonable doubt. In support of this proposition appellant cites the cases of Haley v. State, 12 S. W. (2d) 225, and Dent v. State, 79 S. W. 525, 46 Tex. Cr. R. 166, and we quote from the latter case:

"If deceased himself, by his aggression, and on account of his assault, dazed appellant, rendering him unconscious and incapable of understanding and knowing the right and wrong of his actions, this condition springs out of and inheres in the case; and appellant was entitled to a reasonable doubt on the subject. We are aware that the generally received doctrine is that, where defendant sets up an entirely independent defense, and attempts to prove extrinsic facts, not arising out of the res gestae, such as license to do an act, jeopardy, compulsion, negligence of attendants, and insanity, the burden rests upon the defendant to establish such defenses. In this State the rule with reference to the defense of insanity as a general proposition is, that the burden is on the defendant to show this by a preponderance of the evidence; but in all these cases the condition

of the mind of the party charged with the offense did not arise during the struggle, but was an independent fact. See Webb v. State, 5 Texas App. 596; 9 Texas App. 490; Leache v. State, 22 Texas Crim. App. 279; Burt v. State, 38 Texas Crim. Rep. 397. But this doctrine has never been extended to some state or condition brought about or caused during the difficulty."

To the same effect is the holding in the case of Haley v. State, supra.

It is to be noted herein, however, that appellant's traumatic injury occurred at some time prior to the shooting of deceased; some say but a few minutes, others placing the time at some thirty minutes prior thereto, and while appellant was engaged in a physical encounter with some soldiers, and was knocked down by one of them and became unconscious. He soon recovered therefrom however, and going to his home, he procured his pistol and went into the night club of the deceased's father and fired some four or five shots, one of them striking the deceased and causing his death. We cannot see how this prior trouble with the soldiers had anything to do with the later act of the shooting in the night club .Neither the deceased nor his father were concerned with the difficulty with the soldiers, and such was no part of the res gestae of this killing. No one struck appellant in the night club; the deceased merely seemed to have fled from appellant's shooting, and was shot by appellant through a closed door. We think the cases quoted above should not govern herein under the facts shown, but such defense should come under the general rule of a preponderance of the evidence relative to insanity.

Appellant also complains because the trial court charged the jury relative to the rule of temporary insanity produced by the voluntary recent use of ardent spirits, his claim being that there was no evidence herein that appellant was drunk at the time of the homicide. We quote, in part, Art. 36, P. C., as follows: "Neither intoxication nor temporary insanity of mind produced by the voluntary recent use of ardent spirits shall constitute any excuse for the commission of crime. Evidence of temporary insanity produced by such use of ardent spirits may be introduced by the defendant in mitigation of the penalty attached to the offense for which he is being tried * * *."

However, the appellant objected to the court charging on temporary insanity caused by the recent use of ardent spirits, because "the testimony offered by the State and the defendant

showing that the defendant was not intoxicated at the time of the homicide." The testimony does show by witness Arcos that just prior to the appellant's trouble with the soldiers Joe Villegas and appellant offered Arcos a bottle of beer, which he drank, and they drank beer also; they offered him two beers and he drank them. "I would say he (appellant) was feeling good." Soon thereafter Nick (appellant) had an argument with some soldiers across the street, and struck a blow at them, and a soldier hit Nick twice and he fell down and was unconscious. Arcos and Joe picked Nick up and he tried to hit Arcos. Nick walked off straight, not staggering, and soon returned with a gun in his hand. Witness then stated: "Q. You would not say that Nick was drunk? A. I can't say yes, only that he was—you know."

The witness Joe Villegas testified that he and appellant played a game of pool in the evening prior to the killing, and they drank one beer, Arcos not being present with them. "I have seen drunken men and have been with them. From my experience with drunken men, I will say that Nick was feeling good. That night he could not give me a game so we only played one game. * * * When I saw Nick go out I ran upstairs to see if my wife was all right, and he was staggering. When he started up toward the saloon he was staggering a little bit and he went close to the show window and he bumped into it. * * * Nick was feeling pretty good but he was not drunk. I beat him playing pool. He did not give me a good game. "Q. While you were there, as far as you know that is the only liquor he drank? A. That is all I know."

Mrs. Joe Villegas testified: "I did not see Nicholas until later, about eleven o'clock when he came in. He came in there and I had never seen him drunk before, and I don't know whether he was drunk then but he looked very funny and kind of staggered and he went straight to the kitchen and then into his room and then in a few minutes he went to the kitchen and I do not know what happened, but I heard a glass break at the sink and then he went back to his room and then went out. He did not say anything to me. I did not notice the expression on his face because I was scared as he had a gun in his hand."

Appellant himself testified to the fact that he had only taken three beers the afternoon and evening of the homicide. Appellant's voluntary statement, introduced by the State, relative to his drinking, said: "I had a few beers. * * * I went across the street by myself but I might have gone across to dance hall with Joe Villegas. I was pretty well filled up with beer."

Mrs. Vega testified about appellant coming into the house before the shooting, taking some alkaseltzer and throwing the glass in the sink and breaking the glass, to hearing him loading his pistol, and showing the same to her, and quoting from her testimony:

"I have seen drunken men. * * * I thought he was full of liquor. About 7 o'clock I did notice something. I saw him very different to what I had seen him before because I never knew him to be a drinking man. * * * I believe he was drinking because I detected something of an odor about him, but he was not drunk."

"There are degrees of intoxication or drunkenness. A man is said to be dead drunk when he is perfectly unconscious, powerless. He is said to be stupidly drunk when a kind of a stupor comes over him. He is said to be staggering when he staggers in walking. He is said to be foolishly drunk when he acts the fool. All these are cases of drunkenness of different degrees of drunkenness. * * * Whenever a man is under the influence of liquor so as not to be entirely himself he is intoxicated." Words & Phrases Permanent Edition, Vol. 22, p. 431.

We think the testimony herein was sufficient to call upon the trial court to embody in his charge the defensive right of the appellant as is shown by Art. 36, P. C.

We think this cause was properly affirmed in our original opinion, and the motion is therefore overruled.