**James Robert HURD, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 48872.**

Court of Criminal Appeals of Texas.

Sept. 18, 1974.

Rehearing Denied Oct. 16, 1974.

938

Dan L. Barber, Colorado City, for appellant.

Lealand W. Greene, Dist. Atty., Snyder, and Jim D. Vollers, State's Atty., Austin, for the State.

OPINION

GREEN, Commissioner.

The appellant was convicted, in a trial before a jury, of murder with malice. The punishment was assessed by the jury at life imprisonment.

Appellant does not challenge the sufficiency of the evidence to sustain the conviction; therefore, only a brief recitation of the facts will be necessary.

On March 10, 1973, the body of a sixteen year old girl, Elizabeth Goodlett, was found in a farmhouse approximately two miles south of Snyder. The physician performing the autopsy testified the cause of death was approximately fifteen stab wounds to the head of the victim.

The farmhouse where the body was found belonged to David Dillaha. The victim was Dillaha's girlfriend. The appellant was acquainted with Dillaha and had been keeping a caged bobcat at his farm. On the day in question, the appellant and several of his friends went to the Dillaha farmhouse to feed the bobcat. Elizabeth Goodlett was alone at the farmhouse. Appellant and his friends returned to their apartments in town. At approximately 7:15 P.M. appellant stated he was going to get some cigarettes. He did not return until after 9:00 P.M. When he returned he had a cut on his finger. The appellant told his neighbors and his wife that he had been cut in a fight at a local grocery store. The next day he told one of his companions he cut his finger while at a dance.

In the course of the police investigation of the murder the appellant and his friends were asked to come to the police station to be fingerprinted. The deputy sheriff taking the fingerprints asked appellant how he cut his finger. When the appellant told him he had been cut in a fight at the grocery store, appellant's companion, Dubb Tubb, notified the officer that he was given a conflicting story by appellant.

Upon being confronted with his conflicting stories, appellant made several oral statements and two written statements incriminating himself. The appellant admitted in his statement that he had returned to the Dillaha farmhouse on the day in question when he told his friends he was going for cigarettes. At the farmhouse he found Elizabeth Goodlett alone. They had sat and talked for several minutes when he tried to kiss her; she resisted. At this point appellant stated he went "crazy" and blacked out. The next thing he remembers is standing over the bloody body of the girl. He became frightened and fled the scene. He admitted he had "hurt" the girl and that he "knew he had killed her." However, he did not remember the actual stabbing of the victim due to the temporary blackout.

A fingerprint expert testified that a fingerprint on the bloody knife found in the Dillaha farmhouse matched the appellant's fingerprint.

The defense called a psychiatrist, Dr. Raines, who testified that in his opinion appellant had suffered a "temporary psychotic break" and was insane at the time of the offense. The appellant testified in his own behalf to substantially the same as stated in his written confession.

On rebuttal, the State produced a psychiatrist, Dr. Grigson, who stated as his opinion that appellant was not insane at the time of the trial or at the time of the offense. Rather, he said such a blackout could not have occurred.

In his grounds of error numbers one, twelve, thirteen and fourteen, the appellant complains of jury argument made by the State's attorney. In the first ground of error the complained of argument consists of the following:

"Let's see the things that bother Dan Barber (defense counsel). Let's see the things that bother him, the manipulator. I can bet you the first thing that bothers

him is that this man is guilty beyond a reasonable doubt . . . ."

The State contends the above argument was invited by prior argument of counsel for appellant as follows:

"Now, then, you will remember David Dillaha's testimony and I'm not going to attempt to go into all of his testimony. You will remember it.

"But there are some things that bother me."

\* \* \* \* \* \*

"Well, I'm bothered. I'm bothered about the fact that he took this girl out there and he left her and he didn't come back . . . ."

The defense also argued to the jury that the State was the "manipulator" in this trial and not the appellant in the following argument:

"The prosecution is entitled to infer anything from the evidence that might reasonably follow from the evidence. He has made inference that her jaw was broken by a sociopath, and that when he saw what he had done that he very cleverly manipulated everyone around him in his surroundings, in his environment to escape punishment. Is that consistent with the fantastic evidence of palmprints on everything, blood prints all over? The Sheriff and everybody that testified said that they didn't dust anything else. 'We didn't dust anywhere else for fingerprints except there in the sink.' You can see it.

"Now, this is where you exercise your function as judges. Is this the action of a person who has blacked out or is this the action of the person who is a con man, a clever manipulator of his environment to meet his own end? Don't you see who is being manipulated here? Don't you see that? I know you do, I think."

■ Thus, it would appear that the complained of argument was invited and was in reply to appellant's counsel. Chapman v. State, Tex.Cr.App., 503 S.W.2d 237; Hartman v. State, Tex.Cr.App., 496 S.W.2d 582; Hefley v. State, Tex.Cr.App., 489 S.W.2d 115; Sennette v. State, Tex. Cr.App., 481 S.W.2d 827. However, even if we assume argument was not invited by appellant, we hold it does not constitute reversible error under the totality of the evidence. Bacon v. State, Tex.Cr.App., 500 S.W.2d 512; Joshlin v. State, Tex.Cr. App., 468 S.W.2d 826.

In the twelfth ground of error, the appellant contends the State's attorney made reference to other crimes in the community during his final argument. The appellant's discussion and argument pursuant to ground of error number twelve is limited to the following:

"On pages 1208, 1209, 1219, 1221, 1222, 1247, 1248, 1117, 1216, 1119, 1187, and 1197 of S/F are found examples of references to other crimes in the community and other generally prejudicial statements directed toward the defendant."

■ The use of page numbers to set out the basis for the ground of error is not sufficient to call the Court's attention to the matter about which the appellant complains and does not comply with Art. 40.09, § 9, Vernon's Ann.C.C.P. Thomas v. State, Tex.Cr.App., 451 S.W.2d 907; Gonzales v. State, Tex.Cr.App., 449 S.W.2d 49. Furthermore, the instances where appellant complains the argument was improper are not set out separately and are in violation of Art. 40.09, § 9, V.A.C.C.P., which requires the appellant to "set forth separately each ground of error of which the defendant desires to complain on appeal." For this reason, nothing is presented to this Court for review. Elizalde v. State, Tex. Cr.App., 507 S.W.2d 749; Fausett v. State, Tex.Cr.App., 468 S.W.2d 92.

Appellant's twelfth ground of error is overruled.

In his thirteenth ground of error, the appellant contends the trial court erred in overruling his objection to the following argument of the State's attorney:

"Don't be misled by technique. Is it technique that we get evidence? Is it technique that we prepare for our cases? Is it technique that we try to put murderers in the penitentiary? Stabbers? People who break other peoples' jaws. Is that technique? If that's technique, and this man walks of (sic) the Courtroom, I'll follow him.

"Don't be fooled by—

"MR. BARBER: Your Honor. We object to the last statement of the District Attorney as being an appeal to prejudice and improper argument. And we ask the Court to instruct the jury to disregard it. Without waiving that, we ask the Court to move for a mistrial.

"MR. GREENE: Your Honor, that's a proper request for law enforcement.

"THE COURT: All right. I will overrule the objection."

■ It is error for any attorney to argue his personal opinion of the case. However, the isolated sentence objected to does not reflect the context in which argument was made. It was a plea for a finding of guilt in a context for law enforce-

ment. See Chatman v. State, Tex.Cr.App., 509 S.W.2d 868; Booth v. State, Tex.Cr. App., 499 S.W.2d 129. When the whole argument is considered, no reversible error is shown.

Appellant's thirteenth ground of error is overruled.

■ In his fourteenth ground of error, appellant complains of argument by the State's attorney questioning the belief of appellant's counsel on the merits of the case. However, the record reflects no objection to the argument was interposed by appellant. Absent such an objection, there is nothing before this Court to review. Newman v. State, Tex.Cr.App., 501 S.W.2d 94; Wheeler v. State, Tex.Cr.App., 496 S.W.2d 85.

Appellant's fourteenth ground of error is overruled.

In grounds of error two, three and four, the appellant contends the trial court erred in failing to give the jury charges on "intrinsic insanity" placing the burden upon the State to prove appellant was sane beyond a reasonable doubt. The two requested charges would instruct the jury to find the appellant not guilty if it had a reasonable doubt that at the time of the offense, appellant was insane due to a trauma caused by the deceased kicking him or stabbing him.[1]

1. The two requested charges are as follows: "If you believe from the evidence, or have a reasonable doubt thereof, that the deceased, Elizabeth Goodlett, kicked the defendant, if she did, and such kicking, if any, dethroned defendant's reason, and rendered him unconscious and irresponsible and incapable of understanding and knowing the right and wrong of his actions, and while laboring under such unconscious and irresponsible condition of mind, the defendant, James Robert Hurd, struck the fatal blow or blows, if he did, and at the time said blow or blows were inflicted by him, by reason of such unconscious and irresponsible condition, he was unable to, and did not comprehend and understand the nature of the act he was committing, if any, then you will find the defend-

ant 'not guilty' and if you have a reasonable doubt thereof, you will say by your verdict 'not guilty.'"
"If you believe from the evidence, or have reasonable doubt thereof, that the deceased, Elizabeth Goodlett, stabbed and injured the defendant, if she did, and such stabbing and injury, if any, dethroned defendant's reason, and rendered him unconscious and irresponsible and incapable of understanding and knowing the right and wrong of his actions, and while laboring under such unconscious and irresponsible condition of mind, the defendant, James Robert Hurd, struck the fatal blow or blows, if he did, and at the time said blow or blows were inflicted by him, by reason of such unconscious and irresponsible condition, he was unable to, and did not

The appellant contends the requested charges should have been submitted under the authority of Haley v. State, 111 Tex. Cr.R. 144, 12 S.W.2d 225, and Dent v. State, 46 Tex.Cr.R. 166, 79 S.W. 525. In Haley v. State, supra, the Court quoted from Dent v. State, supra, as follows:

"The court nowhere in his charge applied the law of reasonable doubt to this defense, but, taken as a whole, it required proof of insanity to be by preponderance of the evidence. Under the particular facts of this case the court's charge was error. This identical question was before the court in the case of Dent v. State, 46 Tex.Cr.R. 166, 79 S.W. 525. From this authority we quote: 'If deceased himself, by his aggression, and on account of his assault, dazed appellant, rendering him unconscious and incapable of understanding and knowing the right and wrong of his actions, this condition springs out of and inheres in the case; and appellant was entitled to a reasonable doubt on the subject. We are aware that the generally received doctrine is that, where defendant sets up an entirely independent defense, and attempts to prove extrinsic facts, not arising out of the res gestae, such as license to do an act, jeopardy, compulsion, negligence of attendants and insanity, the burden rests upon the defendant to establish such defenses. In this state the rule with reference to the defense of insanity as a general proposition is, that the burden is on the defendant to show this by a preponderance of the evidence; but in all these cases the condition of the mind of the party charged with the offense did not arise during the struggle, but was an independent fact. See Webb v. State, 5 Tex. App. 596, [Id.] 9 Tex.App. 490; Leach [Leache] v. State, 22 Tex.App. 279, 3 S. W. 539, 58 Am.Rep. 638; Burt v. State, 38 Tex.Cr.R. 397, 40 S.W. 1000, 43 S.W.

344, 39 L.R.A. 305, 330. But this doctrine has never been extended to some state or condition brought about or caused during the difficulty. * * * The defendant is not required to prove any of the circumstances attending the difficulty, beyond a reasonable doubt; but is only required to prove the same as any other facts are required to be proved; and if the matters relied on be supported by such proof as would produce a reasonable doubt in the minds of the jury as to the prisoner's guilt, then the whole evidence comes to be considered by them, they must acquit.' "

The appellant's counsel first argues that the intrinsic insanity was produced when the victim kicked the appellant at the time of the attack. The appellant's confession reads, in part, as follows:

"On the evening of March 10, 1973, I had been with Randy Dryden Ricky Trammell and Chris Covey as I had already told the officers. We were in Ricky's car and when he took me home and let me out Saturday night, I got in my car and left. I went out to the Dillaha farm where I keep my bobcat and a girl there let me in when I knocked. We sat on the couch in the den and talked for a while. The T.V. was on. We just visited and talked about the horse that Dubb Tubb had sold the Dillahas. I had been there for twenty or thirty minutes. I reached over and touched her on the arm or shoulder. She said, 'Don't.' She got up and sat down on the floor. I went over to her and she told me to leave or she would call the cops. I grabbed her by the arm and sat down beside her. She tried to push me away and was kicking me and saying, 'Don't.' I was trying to kiss her and she was hitting me. She was also cussing me and I was drunk and I guess I just went crazy. For the next few minutes I don't recall what all happened.

comprehend and understand the nature of the act he was committing, if any, then you will find the defendant 'not guilty' and if you

have a reasonable doubt thereof, you will say by your verdict 'not guilty.' "

I just remember seeing her laying there with all the blood on her. I don't recall taking her clothes off or her screaming or anything. I could just see her laying there with blood on her and I was scared. I stumbled out of the house and fell down going out the back door. I got up and stumbled again and fell across the hood of my car. I kept stumbling around and finally got in my car. I did not realize my hand was cut until I got out on the highway going back toward town. I don't know how I left the parking area by the house or kept from hitting the cattle guard. I can't even remember pulling out onto the road."

Appellant testified that after he had entered the house he and the deceased had a short conversation. He reached over and touched her on the arm, and she got up and sat on the floor against the wall. In answer to a question as to what happened next, he testified:

"A  I got up and walked over there next to her, laid my hand on her shoulder and she kicked me and said, 'Don't.'

"Q  Okay. Then what happened?

"A  I don't know. I just blacked out.

"Q  You just blacked out. Okay. Where did she kick you Bobby?

"A  Somewhere on the leg. I don't know.

"Q  Did it bruise it?

"A  I don't think so.

"Q  Did it hurt you?

"A  I don't know."

　*　*　*　*　*　*

"Q  Tell the jury what her last words were, Bobby.

"A  She said, 'Don't,' she was going to call the cops.

"Q  And—

"A  And then she kicked me.

"Q  And then?

"A  And then I blacked out.

"Q  You just blacked out, huh?

"A  Yes, sir, sure did.

"Q  Okay. What is the first thing you remember whenever you came back to?

"A  She was laying in the floor.

"Q  She was lying in the floor?

"A  Yes, sir.

"Q  Did she say anything to you?

"A  No, sir.

"Q  Was blood running out of her body?

"A  I don't know. I just seen blood and I run out the door.

"Q  You just saw blood on her body and you just ran out the door?

"A  Yes, sir."

Appellant's testimony produced no evidence from which the jury could find that "deceased (herself) by (her) aggression, and on account of (her) assault, dazed appellant, rendering him unconscious and incapable of understanding and knowing the right and wrong of (his) actions." See the quotation from Dent v. State, supra, copied from Haley v. State, supra. Although appellant's medical witness gave his opinion, based on appellant's statements, that the kicking by deceased and appellant's "blackout" were practically simultaneous, such testimony created no fact issue that the kicking by deceased of appellant in self-defense against his assault on her rendered him unconscious and incapable of understanding and knowing the right and wrong of his actions. We conclude that under the particular facts of this case the trial court properly refused to give the first requested charge. See Libertini v. State, 148 Tex.Cr.R. 248, 186 S.W.2d 263 (opinion on rehearing).

■ The appellant also argues that the intrinsic insanity was caused by the victim stabbing the appellant and cutting his little finger. This requested charge is unsupported by any evidence in the record. The appellant testified that he cut his finger, but was unable to testify as to how the cut occurred.

■ The insanity charge given to the jury properly placed the burden on the appellant to prove his insanity by a preponderance of the evidence. Hogan v. State, Tex.Cr.App., 496 S.W.2d 594; Burton v. State, Tex.Cr.App., 471 S.W.2d 817; Cross v. State, Tex.Cr.App., 446 S.W.2d 314.

Appellant's second, third and fourth grounds of error are overruled.

In his fifth and sixth grounds of error, appellant contends the trial court erred in refusing to instruct a verdict for the appellant on the issue of insanity. The appellant argues the only contradictory testimony offered by the State on insanity was the testimony of Dr. Grigson and his opinion was "improperly drawn from less than the whole evidence in the case." It is appellant's position that since Dr. Grigson had no hypothetical question based upon the whole evidence propounded to him, his testimony was inadmissible.

Dr. Grigson testified as a rebuttal witness for the State. He had conducted a mental status examination of the appellant and, on the basis of this examination, it was his opinion that the appellant was sane at the time of the offense. Dr. Grigson further diagnosed the appellant as a sociopath.

Under the theory upon which opinions of experts are received, a person who was shown to be skilled or experienced in mental diseases may give his opinion, based on a hypothetical state of facts or upon evidence adduced at the trial, as to the sanity or insanity of the person in question. McCormick and Ray, Tex. Law of Evidence, Sec. 1421 (2nd Ed. 1956).

■■ Dr. Grigson's opinion was based on facts identical to those adduced at the trial, as well as his observations of the appellant after the crime was committed. We find the testimony of Dr. Grigson met the rule for the admission of expert testimony. The fact issue of insanity as a defense was raised by the testimony of the expert witnesses and by other evidence in the record. The court properly submitted this issue to the jury.

Appellant's fifth and sixth grounds of error are overruled.

■ In his seventh ground of error, the appellant contends the trial court erred in "allowing the State to introduce evidence through hearsay and opinion of the witnesses as to the state of mind of the wife of appellant, thereby violating Art. 38.11, V.A.C.C.P., over appellant's objection." Neither in appellant's ground of error or in the subsequent discussion does he set out what evidence is complained of and where it can be found in the record. Obviously, this does not comply with Art. 40.-09, § 9, V.A.C.C.P., and presents nothing for this Court to review. Peterson v. State, Tex.Cr.App., 508 S.W.2d 844; Thomas v. State, Tex.Cr.App., 451 S.W.2d 907.

■ In his eighth ground of error, appellant contends the trial court erred in allowing the State to cross-examine the appellant's wife on aspects of the case not covered by her direct testimony in violation of Art. 38.11, V.A.C.C.P. The complained of questions are as follows:

"Q Let's see. Bobby is very loyal to you. Has he ever given any indication that he is not loyal to you?"

 *   *   *   *   *   *

"Q Can you give us a specific instance of any of these things where he responded to punishment?"

 *   *   *   *   *   *

"Q You feel Bobby is loyal to you?"

The record reflects that the State's attorney's questions above were related only to matters which were covered in the following direct examination of appellant's wife:

"Q (Appellant's counsel): You feel Bobby is loyal to you?

"A Yes.

"Q Are you loyal to Bobby?

"A Yes.

"Q All right. Do you feel that Bobby is the sort of person that fails to learn from experience of benefits from punishment?

"A No, I do not."

Therefore, no violation of Article 38.11, V.A.C.C.P., is shown. Jones v. State, Tex.Cr.App., 501 S.W.2d 308; Splawn v. State, 162 Tex.Cr.R. 197, 283 S.W.2d 66.

Appellant's eighth ground of error is overruled.

In his ninth ground of error, the appellant contends the trial court erred in allowing the State to introduce evidence of specific acts of misconduct of the appellant to rebut testimony of his general character traits.

Leonard Keys, a witness for the appellant, testified on direct examination:

"Q (Appellant's counsel): Now, then, let me ask you this. State whether or not at an early age Bobby had trouble with his school authorities and with the law, had some trouble with the school—with the school authorities and the law?

"A No, sir.

"Q I suppose you occupy the position to him as a coach. Is that correct?

"A Yes, that's right.

"Q Did you have any discipline problems with him?

"A None whatsoever."

On cross-examination, the prosecutor asked the witness:

"Q Have you heard that he (the appellant) was arrested in Scurry County at one time for stealing a shotgun?

"A No, sir."

At this point appellant objected, the trial court sustained his objection, and instructed the jury to disregard.

Since the witness answered that he had not heard of any such incident as inquired about and the court instructed the jury to disregard the question, appellant's only complaint is that the mere asking of the question constituted reversible error. The record reveals that the witness Keys was testifying as a reputation witness for appellant, even though the classic question for reputation witnesses was not asked. Childs v. State, Tex.Cr.App., 491 S.W.2d 907. Therefore, the asking of the "have you heard" question was proper in order to test the knowledge, credibility and sincerity of the witness so as to enable the jury to weigh his testimony. Carter v. State, Tex.Cr.App., 506 S.W.2d 876; Wallace v. State, Tex.Cr.App., 501 S.W.2d 883; Childs v. State, supra; Brown v. State, Tex.Cr.App., 477 S.W.2d 617.

Appellant's ninth ground of error is overruled.

In his tenth ground of error, the appellant contends the trial court erred in overruling appellant's motion to quash the jury array due to the absence of a number of the panel who had been excused by the court. Appellant's challenge to the array was not supported by affidavit as required by Art. 35.07, V.A.C.C.P., and nothing is presented for review. Donald v. State, Tex.Cr.App., 453 S.W.2d 825. Also, the record reflects that after the trial court overruled appellant's motion he made no

effort to attach the absent jurors in compliance with Art. 35.01, and Art. 37.07, V. A.C.C.P. Consequently, appellant is not entitled to complain with respect to excusing such prospective jurors. Ward v. State, Tex.Cr.App., 505 S.W.2d 832. Further, there is no showing that appellant was required to accept an objectionable juror. See Ward v. State, supra; Story v. State, Tex.Cr.App., 502 S.W.2d 764.

Appellant's tenth ground of error is overruled.

In his eleventh ground of error, appellant contends the trial court erred in admitting into evidence five colored photographs of the deceased girl's body. The photographs in question are different views of the mutilated, half-nude body of the victim in the position it was discovered.

During the State's case in chief the photographs of the victim were not offered into evidence. Olin Burdett, a witness for the defense, then testified concerning the discovery of the body. Burdett was shown the photographs of the murder scene, which did not include the body, that had been previously admitted. He testified that the blood stains appearing in these pictures were not present when he first discovered the body. On cross-examination the State offered into evidence the photographs showing the victim. The State contends these photographs were offered to impeach the testimony of the witness showing that the witness did not remember certain items in the house.

The photographs were fully authenticated by the testimony by State witnesses. As stated in Kalinec v. State, Tex.Cr.App., 500 S.W.2d 146, "[t]his was a gruesome murder but the photographs did no more than show the facts." We find the trial court did not abuse its discretion by admitting the photographs into evidence. Kalinec, supra; Byrd v. State, Tex.Cr.App., 495 S.W.2d 226; Foster v. State, Tex.Cr.App., 493 S.W.2d 812; Martin v. State, Tex.Cr.App., 475 S.W.2d 265.

Appellant's eleventh ground of error is overruled.

In his last ground of error, the appellant contends the court erred in refusing to give the jury a charge on circumstantial evidence.

As previously noted, the appellant made several statements to the police. He stated that he knew that he had killed deceased.

A charge on circumstantial evidence need not be given when there is evidence of an admission by the accused that he killed the deceased. Swift v. State, Tex.Cr.App., 509 S.W.2d 586; Hogan v. State, Tex.Cr.App., 496 S.W.2d 594; Corbett v. State, Tex.Cr.App., 493 S.W.2d 940; Steel v. State, Tex.Cr.App., 459 S.W.2d 649.

Appellant's fifteenth ground of error is overruled.

The judgment is affirmed.

Opinion approved by the Court.