Robert Lacy CAMPBELL, Appellant,

v.

The STATE of Texas, Appellee.

No. 51582.

Court of Criminal Appeals of Texas.

Jan. 19, 1977.

Rehearing Denied Feb. 9, 1977.

Kenneth H. Crow and Frank M. Fitzpatrick, Jr., Waco, for appellant.

Carol S. Vance, Dist. Atty., James C. Brough and Robert C. Bennett, Jr., Asst. Dist. Attys., Houston, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

GREEN, Commissioner.

In a trial before a jury appellant was convicted of murder with malice. Punishment was assessed at fifty-two years.

In his eighth ground of error, appellant contends the evidence was insufficient to support the verdict.

In his seventh ground, he complains of the failure of the court, over objection, to charge on specific intent to kill.

The indictment alleged that appellant on or about October 18, 1973, in Harris County with malice aforethought killed Robert Ray Campbell "by beating him about the head with a blunt instrument, the exact description of which is to the Grand Jury unknown . . . ."

The record reveals that it was the State's theory that appellant murdered deceased by beating him to death in a motel room in

Houston, and his motive was that he did it for hire by Dwight Parks to prevent deceased from testifying against Parks in criminal cases pending against Parks in state and federal courts in Arkansas.

■ The record reflects that in July, 1972, deceased, Thomas Burke, and Dwight Parks were jointly under indictment in the federal district court for the western district of Arkansas on a "fraud type case" involving a mobile home operation. Deceased, on his plea of nolo contendere, was convicted and placed on probation for three years. Sam Parks, the assistant United States district attorney in charge of the prosecution of the Arkansas federal case, testified in the instant trial that deceased had agreed to become a witness against his two co-defendants. Gary Kennon, the prosecuting attorney in the Arkansas state court where another case was pending, testified that deceased was to be a witness against Parks in a case of "embezzlement of a large sum of money" pending in his court. Thomas Burke testified that he was named as a co-defendant with deceased and Dwight Parks in the fraud case in the federal court in Arkansas. He testified that on the occasion of deceased's trial in that court Parks told him (Burke) that if deceased turned state's evidence and testified against him, he (Parks) would kill deceased. Deceased was killed prior to either of the above mentioned cases being tried, and while both were pending.

Larry Campbell, son of deceased, testified that for five or six days prior to October 18, 1973, he saw appellant on each day driving a 1972 Oldsmobile in front of the house in Houston in which he and his father lived. He identified this car as being the car depicted in a photograph admitted in evidence as State's Exhibit 10. About noon on October 18 he again saw appellant driving this Oldsmobile around the block of which his home was a part. Campbell was "pretty curious about what their business was" so he tried to stop appellant, but appellant as he passed "tried to throw his hand up over his face" and drove on. Shortly thereafter, deceased received a phone call from a man giving his name as *Bates*, after which deceased left the house telling his son Larry that he had to pick up a man named Bates at the airport at 1:15 or 1:30 p.m. That was the last time Larry Campbell saw his father alive.

Joel Allen, a friend of Larry Campbell, also identified appellant as the driver of the Oldsmobile depicted in State's Exhibit 10 which circled the block containing deceased's home on October 18.

A maid, while cleaning room 2122 of the Sheraton Inn of Houston on October 19 found the sheets and towels very bloody. A blanket belonging in the room was missing. Room 2122 was registered to R. J. Bates.

O. O. Owens testified that in 1972 and 1973 he operated a used car business in Waco which was financed by Dwight Parks. In August, 1973, Parks introduced appellant, under the name of Bray, to Owens, and secured from Owens a 1972 Oldsmobile which Owens subsequently saw appellant driving in Waco. At Parks' request, Owens recorded this Oldsmobile as having been sold to a "Timmons or Simmons." Owens testified that Parks, who had financed Owens' original purchase of the car, "kept all titles to the cars" in his possession. This 1972 Oldsmobile was identified by Owens as being similar to the car depicted in State's Exhibit 10.

Franklin R. Willis, a State's witness, testified substantially as follows:

His home was in Milton, Santa Rosa County, Florida, but at the time of the trial he was an inmate of a federal penitentiary. He became acquainted with appellant in May, 1973, and had seen and conversed with him a number of times between May and October. In August, 1973, in a conversation between Willis, appellant, and Carmen Phillips, appellant stated that there was a man in Texas that he had to get rid of to keep him from testifying "in a trailer case of some kind" in Arkansas. He "wanted to know if they could help him or knew anybody that could help him." Willis and Phillips declined to get involved. On September 6th or 7th, appellant called Willis by phone, stating that he was registered at the

Sheraton[1] Inn at Houston under the name of Jack Saunders, and offered Willis $15,-000, and then $25,000 to come to Houston and help him kill a man. He offered to send airplane tickets for Willis and Phillips. Willis talked to Carmen Phillips, and when appellant called back he again declined to get involved.

Three or four days later, appellant drove to Willis' home in Florida, driving the 1972 Oldsmobile, and appearing "awful upset." He showed Willis a pistol that he said "he was going to do it with." Appellant and Willis went to the home of Carmen Phillips, where appellant again made the offer of $25,000 for help in killing a man in Texas. Phillips and Willis again refused. They then went to the home of Glen Porter Dismukes in Pensacola, Florida, where there was more talk of the killing. Dismukes asked appellant if he had "got his job done" and appellant replied that he had not.

Willis next heard from appellant on October 22nd or 23rd, when appellant called him from his home nearby where he stayed with his girl friend, Freda Case. Appellant asked him whether lime would "decreate a body," and told Willis that he had "took care of the man." At appellant's request, Willis and Carmen Phillips went to Freda Case's house, where they had a long conversation with appellant. Appellant told them that he had killed the man he had been hired to kill in a motel room in Houston by beating him in the back of his head "until he gave slap out." Appellant showed them bruise marks on his legs caused, he said, by the man kicking him during the struggle. When the scuffling was finished, appellant opened the door, and a confederate entered the room. They wrapped deceased's body in a blanket taken from the room and placed it in the trunk of a car. Willis testified that appellant said he then drove toward Florida. As he got to the Mississippi River, he noticed blood running from the

trunk of his car. We washed the blood off, and called a Mrs. Smith, who lived in Hattiesburg, Mississippi, and "told her he was coming, but she didn't know that he was going to bury the body there, is what he said." Appellant stated that he "buried the body in her back yard." As to appellant's disposition of the body, Willis testified:

"Q Not what anybody presumed, but I mean what did the defendant say that he did with the body after he loaded him in the car, if he said anything?

"A He said he carried it to Mississippi but just before he got to Mississippi he said he stopped and used the telephone and called Glen Dismukes up and asked him to help put the body in the Mississippi River, and he looked out there and there was blood running out of the car, so he went out and raised the trunk of the car and put a pillow under the man's head where he wouldn't bleed, and he got a water hose at the service station and washed the blood off and he left and went to Hattiesburg,[2] Mississippi, where he buried the body.

"Q All right, now, did he specifically describe for you the area in which he buried the body?

"A Yes, sir, he did.

"Q What did he say about that?

"A He said it was by a four-lane highway on a main detour to Houston, Texas, and it was a Sears, Roebuck shopping center right behind it because while he was digging the grave he could see the lights of the Sears, Roebuck shopping center.

\*   \*   \*   \*   \*   \*

"A He told me about burying it. He said that he went to digging, he

---

1. Expert testimony established that the hotel registration card signature of Jack Saunders was in appellant's handwriting.

2. The witness subsequently stated that appellant friend's did not say Hattiesburg, but said he buried the body in a friends back yard in

Mississippi. The place where this friend lived was definitely shown to be Hattiesburg, Mississippi by direct evidence.

give—he dug until he gave out. He went inside and eat, took a bath and went to bed and come back and finished digging the grave, and drug the man around there and the blanket and put him in and buried him, and put lime on him.

"Q Did he at that time say anything about the lime that he had asked you about over the telephone?

"A He said he put lime on it. Then he buried the man and put pine needles over the grave, he said. Said that the lady where he buried the body at, he called her up in Mississippi and asked—told her he was coming, but she didn't know that he was going to bring the body there, is what he said."

Appellant told Willis and Phillips that this place was by a four-lane highway on a main detour to Houston near a Sears-Roebuck shopping center, and while digging the grave he could see the Sears-Roebuck sign. He stated the 1972 Oldsmobile he was driving, in which he had concealed the body, had been given him by the man who had hired him to kill the man, but he needed to get rid of it. Willis sold him a stolen Lincoln Continental automobile. Prior to this, however, Willis and Phillips had told the sheriff of Santa Rosa County of the conversations with appellant and alerted him to the planned delivery of the Lincoln Continental to appellant. Officers saw appellant drive the 1972 Oldsmobile to the place where the other car was to be delivered, exchange luggage into the Lincoln, and drive off. He was soon thereafter arrested. Photographs were taken of the Oldsmobile, and *State's Exhibit 10*, one of these photographs, was identified by witnesses including deceased's son Larry Campbell and Joel Allen as depicting the car seen by them driven by appellant in front of deceased's house on the day of the killing and seen in appellant's possession in Hattiesburg.

Carmen Phillips testified substantially as did Willis concerning the conversations with appellant. He stated, in addition to the other details told them by appellant, that appellant said that using the name Bates he met the deceased at the airport in Houston and took him to a hotel room where he beat him from behind with a blackjack until he gave out. He took the body to the home of a friend of his in Mississippi and buried the body in a shallow grave in the back yard, and covered the grave with pine needles.

An employee of Sears-Roebuck and Company in Hattiesburg, Mississippi, testified that on October 19, 1973, appellant purchased a spade, posthole digger and a pick from him. An employee of another store testified that some time in the middle of October she sold Laura Virginia Smith, the owner of the place where the body was buried, seven fifty-pound bags of household lime. A carpenter working at the Smith residence on October 20th said he saw a mound of pine needles and the lime sacks in Mrs. Smith's yard and asked her what she was planning to do with the lime.

Tammy Smith, the daughter of Laura Virginia Smith, testified that on October 19 she saw appellant go to Sears-Roebuck store, and on October 20 she saw him washing out the trunk of an Oldsmobile, which she identified as being the car pictured in State's Exhibit 10. A friend of Tammy Smith, Rickey White, testified that on October 19 he saw appellant's car "backed up on the right side up to the gates" and appellant "out in the yard doing something." Later he talked to appellant, who was "raking some pine straw."

Arlon Moulds, a detective on the Hattiesburg police force, testified that the Smith home is separated from Sears-Roebuck store by a four-lane highway and that one standing at the grave site in the Smith yard could see the Sears sign. Moulds found in a storeroom under the carport of the Smith home a new posthole digger, a new pick and a new shovel. These were identified as the same articles sold appellant by the Sears-Roebuck clerk. Moulds testified that, armed with a search warrant, he and other officers probed the ground underneath the mound of pine needles and straw in the Smith yard and found the body of a man buried in a shallow grave, wrapped in a

blanket. The blanket was identified as being the one missing from room 2122 of the Sheraton Inn of Houston.

Larry Campbell, son of deceased, testified that he was contacted by officers from Florida, and went to Santa Rosa County, where he identified the 1972 Oldsmobile as being the one seen by him on October 18 under the circumstances heretofore stated. From there he went to Hattiesburg, where he identified the body of the man recovered from the grave in the Smith yard as that of his father, Robert Ray Campbell, the deceased in this case.

The body was delivered to Dr. Joseph Jachimczyk of Houston, Harris County Medical Examiner, for an autopsy. Dr. Jachimczyk testified that his autopsy, performed November 8 and 9, revealed the cause of death to be a "fractured skull and broken neck resulting from multiple blunt trauma to the head."

A member of the grand jury which returned the indictment testified that the grand jury was unable to determine the nature of the weapon used to kill deceased, although it sought diligently to secure that information.

Appellant did not testify.

We find that the evidence sufficiently shows an intent on the part of appellant to kill deceased, and that it is sufficient to support the verdict.

The seventh and eighth grounds of error are overruled.

In his fifth and sixth grounds of error, appellant complains of the refusal of the court to charge on the law of circumstantial evidence.

Appellant's statements to the witnesses Willis and Phillips admitted that he killed a man in Houston, placed the body in the trunk of his 1972 Oldsmobile, took it to Mississippi, asked about the effect of lime on a body, and buried the body of the man he had killed in the motel room in Houston in a shallow grave in the back yard of a friend. Direct evidence established that the place of burial was the back yard of the home of appellant's friend Laura Virginia

Smith in Hattiesburg, Mississippi. Also, the fact that the body buried there by appellant, who started digging the grave the day following the killing and actually buried the body the day after that, was the body of deceased Robert Ray Campbell was established by direct evidence.

■ A charge on circumstantial evidence need not be given when there is evidence of an admission by the defendant that he killed deceased. *Hurd v. State*, Tex.Cr. App., 513 S.W.2d 936, 946; *Swift v. State*, Tex.Cr.App., 509 S.W.2d 586.

■ We find the evidence of the admissions of appellant, together with the direct evidence establishing that the man killed was the deceased Robert Ray Campbell, relieved the court of any necessity to charge on circumstantial evidence. The fifth and sixth grounds of error are overruled. See *Patterson v. State*, Tex.Cr.App., 416 S.W.2d 816; *Ridyolph v. State*, Tex.Cr.App., 545 S.W.2d 784 (1977).

■ In his first four grounds of error, appellant complains of the refusal of the court to instruct the jury in the charge that unless the jury found from the evidence beyond a reasonable doubt that a conspiracy existed between appellant and Dwight Parks to kill deceased, it could not consider the acts and declarations of Dwight Parks as introduced in the testimony of Thomas A. Burke (ground 1), Sam parks (ground 2), and O. O. Owens (ground 3).

The substance of the testimony of these witnesses is summarized in our discussion of the sufficiency of the evidence. Such testimony tended to establish a motive for the killing by appellant of deceased. This motive, to prevent deceased from testifying against Dwight Parks in criminal cases pending in Arkansas, was admitted by appellant in his statements to the witnesses Willis and Phillips, as evidenced by their testimony. These witnesses testified that prior to the killing appellant told them there was a man in Texas he had to get rid of in order to keep him from testifying in a "trailer case" in Arkansas. After the killing, appellant told them the job had been done, and described the details which, along

with other evidence, pinpointed the man who had to be killed as the deceased Robert Ray Campbell. Appellant told the witnesses that the Oldsmobile, which is shown by the evidence to have been used by appellant in every stage connected with the homicide, was given him by the man who had hired him to do the killing. There is no evidence in the record contrary to the evidence.

The instruction asked by appellant and refused by the court was that the jury may not consider the testimony of the witness Burke (ground 1), Sam Parks (ground 2), O. O. Owens (ground 3) of statements and transactions made by co-conspirator Dwight Parks for any purpose whatever unless it first finds from the evidence beyond a reasonable doubt that at the time and on the occasion in question there was a conspiracy existing between the said DWIGHT PARKS and this defendant and that the alleged statements and transactions of the said DWIGHT PARKS were made during the pendency of such conspiracy and in furtherance of such conspiracy.

The refusal of the court to give such charge in a conspiracy case was held by this Court not to be error in *Mutscher v. State*, Tex.Cr.App., 514 S.W.2d 905, p. 925.

Additionally, the evidence was clearly sufficient to prove that appellant murdered deceased by committing the violent acts causing his death. Appellant was not tried as a conspirator under the law pertaining to conspiracy. The testimony of Burke, Sam Parks, and Owens was introduced for the purpose of showing motive—that appellant was hired by Dwight Parks to kill deceased to prevent him from testifying as a prosecution witness in criminal cases pending against Dwight Parks in Arkansas. This motive was admitted by appellant in statements made by him to State witnesses Willis and Phillips, as hereinabove summarized. No fact issue was raised by any evidence in the record as to the fact that the killing was the result of such motive.

In view of the totality of the evidence, and the circumstances shown thereby, we conclude that error, if any, in the failure of the court to give the requested instructions was harmless, and does not constitute cause for reversal. See *Brown v. United States*, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208; *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284.

■ In his ninth ground of error, appellant complains of the court's response to a note sent to the court by the jury during its deliberations at the guilt stage. The note requested the following testimony be read to the jury and the court made the following reply:

"1.) Testimony of Larry Cambell (sic) in response to questioning by Mr. Bennett with regard to his actions on October 18th.

"2.) Testimony of Larry Cambell (sic) by questions of Mr. Crow with regard to his actions on October 18th.

"3.) Cross-examination of Mr. Willis by Mr. Crow.

"4.) Cross-examination of Carmen Phillips by Mr. Crow.

"The court replied in writing as follows: 'We are presently looking up the requested testimony in # 1 and # 2 and as to # 3 and # 4 you must specify that portion of the testimony about which there is a dispute.'"

The record reflects that the court read part of the testimony requested in paragraphs (1) and (2) but, since the jury made no further response to the court's note as to (3) and (4), this portion of the testimony was not read.

The record does not reflect any objection having been made to the court's reply until after it was sent to the jury, the testimony requested in (1) and (2), supra, was read, and the jury had returned to their room for further deliberation. Any objection thereafter came too late. Nothing is presented for review. *Swindell v. State*, Tex.Cr.App., 491 S.W.2d 400 and authorities cited.

The judgment is affirmed.

Opinion approved by the Court.

ROBERTS, Judge, dissenting.

The majority holds that no circumstantial evidence charge was required. I cannot

agree. The case should be reversed and remanded on the authority of our recent holding in *Casey v. State*, 523 S.W.2d 658 (Tex.Cr.App.1975).

In *Casey*, as in this case:

"The direct evidence sufficiently proved the corpus delicti of the offense. The remaining element of proof essential to the State's case was that appellant was the guilty agent in causing deceased's death. *Self v. State*, Tex.Cr.App., 513 S.W.2d 832 [1974]; *Brantley v. State*, Tex.Cr.App., 522 S.W.2d 519 (1975)." 523 S.W.2d, at 659.

*Casey* was a murder case which was reversed because no circumstantial evidence charge was given. There it was undisputed that the deceased, O'Neill, was killed on May 22, or 23, 1973, during a service station robbery. To show that Casey committed the offense, the State relied on Casey's written confession and on his admissions to Deborah Ann Simmons. Simmons was the only person who testified about Casey's admissions to her. She "did not at any time identify the place at which the robbery and killing happened, or who was robbed or who was shot. She did not even fix the date of the occurrence, except to say 'back in May, 1973,' although on cross-examination she was asked a couple of questions about May 23, 1973." Id., at 660.

In discussing whether Casey's confession sufficiently connected him with the crime, this Court stated:

"In his written confession, appellant admitted that 'in the latter part of May of this year (1973)' he and Clifton Currie left a motel room in Dallas together and, using a .32 caliber pistol, committed a robbery at a Gulf or Exxon service station 'out north' close to a big freeway, shot the attendant (not named or identified), took between sixty and seventy dollars from the cash box, and drove back to the motel. There is nothing in the statement to identify the service station or the attendant who was shot or the date of the shooting other than as just stated. There is no fingerprint evidence in the record. Although the confession admits to guilt of a robbery and shooting, there is nothing in it which directly connects appellant with the murder of Richard Allen O'Neill. The ultimate fact of whether appellant, either by his own act or as a principal with another, killed deceased, was not established by any direct evidence. Such evidence was necessary to avoid a charge on circumstantial evidence. *Crawford v. State*, Tex.Cr.App., 502 S.W.2d 768; *Hielscher v. State*, Tex. Cr.App., 511 S.W.2d 305; *Powell v. State*, Tex.Cr.App., 494 S.W.2d 575; *Blankenship v. State*, Tex.Cr.App., 481 S.W.2d 147; 31 Tex.Jur.2d, Instructions, Sec. 123, p. 689. See *Parker v. State*, Tex.Cr.App., 492 S.W.2d 590. Cf. *Hogan v. State*, Tex. Cr.App., 496 S.W.2d 594." Id., at 660.

Here, as in *Casey*, the evidence is clearly sufficient to prove the corpus delicti. And it is clear that the direct evidence showed that the appellant committed an offense; however, the evidence that appellant was guilty of the murder of Robert Ray Campbell is purely circumstantial. I quote from the majority opinion in this case:

"Appellant's statements to the witnesses Willis and Phillips admitted that he killed a man in Houston, placed the body in the trunk of his 1972 Oldsmobile, took it to Mississippi, asked about the effect of lime on a body, and buried the body of the man he had killed in the motel room in Houston in a shallow grave in the back yard of a friend. Direct evidence established that the place of burial was the back yard of the home of appellant's friend Laura Virginia Smith in Hattiesburg, Mississippi. Also, the fact that the body buried there by appellant, who started digging the grave the day following the killing and actually buried the body the day after that, was the body of deceased Robert Ray Campbell was established by direct evidence."

These facts summarized by the majority are direct evidence, but not of the main fact to be proved; instead they are direct proof of secondary facts *from which must be inferred* the main fact of appellant's commis-

sion of this offense. This is the fundamental distinction between direct and circumstantial evidence. See *Crawford v. State*, 502 S.W.2d 768 (Tex.Cr.App.1973).

I fail to see the distinction between this case and *Casey*. See also *Martinez v. State*, 151 Tex.Cr.R. 316, 207 S.W.2d 387 (1948). Because of the court's failure to give a charge on circumstantial evidence,[1] the judgment should be reversed.

---

1. I observe that appellant not only timely objected to the court's charge on this ground, he also filed a timely requested charge setting out the law of circumstantial evidence and applying it to the facts of this case. See Arts. 36.14, 36.15, V.A.C.C.P.