Georgia Lucille HUDSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–83–01260–CR.

Court of Appeals of Texas,
Dallas.

July 23, 1984.

Rehearing Denied Aug. 16, 1984.

Robert E. Richardson, Jr., Sherman, for appellant.

Stephen Davidchik, County Atty., Duke Walker, Asst. County Atty., Sherman, for appellee.

Before STOREY, STEWART and SHUMPERT, JJ.

STOREY, Justice.

This is an appeal from a conviction of misdemeanor theft. Appellant contends that (1) there was a fatal variance between the allegations in the information and the proof at trial, (2) the evidence was insufficient to prove intent to steal, (3) the prosecutor committed misconduct in making a sidebar comment, (4) the court erred in improperly forming the jury, and (5) appellant did not receive effective assistance of counsel. We disagree with each of these contentions and, consequently, affirm.

Appellant initially contends that there was a fatal variance between the allegations in the information and the proof offered at trial. The information alleged that appellant stole, among other items, a shaver. Appellant contends that the evidence at trial showed instead that a package of "Personal Touch razorblades" was stolen. The testimony elicited at trial, however, established that the shaver was packaged with razorblades and had a brand name: "Personal Touch."

█ Appellant was charged with shoplifting from a Tom Thumb grocery store. Bill Overturf, an employee of the store, observed appellant place several items in her purse and leave the store without paying for them. He testified that, after stopping appellant outside the store and checking her purse, he found "a bottle of perfume, a shaver and some deodorant." On cross-examination he testified:

Q   Now, for the purposes of the appellate record let's get one thing real straight real quick. Is this lady accused of stealing a shaver or is she accused of stealing $2.69 worth of Personal Touch Blades?

A   A shaver, sir.

Q   Let me again show you defendant's exhibit one and refer you to item three on the report that was at least filled out in your presence. What is item three of the three objects?

A   It says Personal Touch Blades.

Q   What was it that was taken from the defendant or from the defendant's purse and what was it she was accused of stealing on the day in question? The shaver or Personal Touch Blades?

A   It's a shaver but the blades are also in it.

Jean Wood, the head cashier at the store, testified as follows:

Q   Did you see the items that she took from her purse?

A   Yes, I did.

Q   What were those items?

A   There was some cologne, some body spray and a shaver.

We hold the evidence sufficient to establish that a shaver was taken by appellant, as alleged in the information. *Wilson v. State*, 654 S.W.2d 465, 471 (Tex.Crim.App. 1983).

Appellant next contends that the evidence is also insufficient to prove her intent to steal the items in question. She relies on *McElyea v. State*, 599 S.W.2d 828, 829 (Tex.Crim.App.1980), in which the court held that the presumption of guilt from unexplained possession of stolen property is rebutted if the defendant, when first called upon to explain, makes a reasonable and unrefuted explanation showing an honest acquisition of the property. The facts of *McElyea* are distinguishable from the facts of our case. In *McElyea*, the defendant was found in possession of a stolen horse trailer. He explained that the trailer had been given to him by his brother and that he had no idea it was stolen. The defense was able to corroborate all of the details of the defendant's explanation, and the State offered no evidence of the defendant's guilt other than his possession of the stolen property.

In our case, Overturf observed appellant "acting a little strange," "looking around," and "not pick[ing] up anything until this other lady left the aisle." He then saw her conceal two items in her purse, go to the pharmacy area and ask for perfume, walk to an unoccupied aisle and conceal the perfume, and finally go through the checkout lane—paying for other items, but not those in her purse. After she left the store, appellant was stopped and asked to return. She claimed that she did not intend to steal the items, but that she did not have enough room to carry everything, so she put some items in her purse and then forgot about them. She signed a statement at the store, however, in which she stated: "While in the store I willfully concealed the following items of merchandise known by me to be the property of the store being offered for sale by them in the amount of $12.47 and did take and remove same *with no intentions of making payment* for same [emphasis added]." The statement then listed the items and their values.

■ Specific intent to commit theft may be inferred from surrounding circumstances. *Coronado v. State*, 508 S.W.2d 373, 374 (Tex.Crim.App.1974). The jury was authorized to accept or reject any or all of the testimony of any witness. *Harriford v. State*, 487 S.W.2d 351, 352 (Tex. Crim.App.1972). We hold the evidence sufficient to support the jury's finding of intent.

■ Appellant next complains of an improper sidebar comment by the prosecutor. Appellant failed to secure a ruling on her objection and failed to request any curative instruction, thereby preventing the trial court from having any opportunity to withdraw any impressions produced by the comment. Thus, nothing is preserved for review. *Todd v. State*, 598 S.W.2d 286, 296 (Tex.Crim.App.1980); *Brown v. State*, 632 S.W.2d 191, 193 (Tex.App.—Waco 1982, no pet.).

Appellant next complains of the formation of the jury panel. Appellant's case was the second trial for that week. A jury was selected for the first trial from the available list of twenty-nine jurors. Thereafter, the remaining twenty-three were available for selection for appellant's trial. Appellant objected that those six now unavailable jurors "would have been more than acceptable as jurors in this cause" and that to deprive her of the same opportunity to select a fair and impartial jury as the first defendant would be to deny her equal protection. She requested that the panel be quashed, and the cause reset. The prosecutor offered to continue the trial until the beginning of the next week, when defense counsel could pick the first jury from a full panel. Appellant replied that she was not asking for a continuance, but rather a ruling on her constitutional challenge to the array. She offers no authority in support of her argument and does not allege how she was harmed.

■ A defendant must prove that he was forced to take an objectionable juror before an appeals court can find reversible error. *Esquivel v. State*, 595 S.W.2d 516, 523 (Tex.Crim.App.1980); *Hurd v. State*, 513 S.W.2d 936, 946 (Tex.Crim.App.1974). Appellant's challenge to the array was not supported by affidavit as required by TEX. CODE CRIM.PROC.ANN. art. 35.07 (Vernon 1966) and, therefore, presents nothing for review. *Stephenson v. State*, 494 S.W.2d 900, 905 (Tex.Crim.App.1973).

Finally, appellant alleges ineffective assistance of counsel. Appellant's counsel on appeal also represented her at the trial on the merits. He now claims that his representation of appellant at trial was ineffective because he lost the case. He states: "My effectiveness should be judged on the *result*." In addition, he claims he was unthorough in his preparation, adding: "I very sadly suspect that had I been *retained* at my normal rate, I'd have spent a great deal more time in preparation."

■ The standard for reviewing the effectiveness of counsel is the same for appointed counsel as it is for retained counsel. *Cuyler v. Sullivan*, 446 U.S. 335, 344–345, 100 S.Ct. 1708, 1716–1717, 64 L.Ed.2d 333 (1980); *Martinez v. State*, 625

S.W.2d 421, 422 (Tex.App.—San Antonio 1981, no pet.). "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Strickland v. Washington,* — U.S. —, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 2065–2066. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." *Id.* at 2065.

■ Applying this standard to appellant's case, we note that appellant's counsel concedes that he "vigorously cross-examined State's witnesses; [he] objected at the proper times; [he] protected [appellant's] appellate record; [he] made the most of the proper motions at the proper times; [he] argued passionately." However, he then proclaims: "I know that if [appellant] had been wealthy and in a position to expend unlimited funds for fees and expenses, I'd have done much more by way of preparation." After making a careful examination of the totality of the representation in the record before us, we are not persuaded that appellant was denied effective assistance of counsel.[1]

Affirmed.

---

[1.] While we are firmly convinced that appellant was not denied effective assistance of counsel in this case, we cannot leave unchallenged counsel's repeated statements in his brief that, had he been paid his normal retained fee, his representation would have been more effective. We need not elaborate the damage to our system of justice caused by such assertions. Instead, we invite these assertions to the attention of the appointing judge for appropriate disciplinary action.