ACCEPTED
05-14-01097-cr
FIFTH COURT OF APPEALS
DALLAS, TEXAS
10/30/2015 11:39:39 AM
LISA MATZ
CLERK

FILED: 11/03/15
5th Court of Appeals
Lisa Matz, Clerk

*The State Requests Oral Argument Only If Appellant Argues*

## NO.  05-14-01097-CR

IN THE COURT OF APPEALS
FOR THE FIFTH DISTRICT OF TEXAS
AT DALLAS

RECEIVED IN
5th COURT OF APPEALS
DALLAS, TEXAS
10/30/2015 11:39:39 AM
LISA MATZ
Clerk

DANIEL MAVERO,
APPELLANT

vs.

THE STATE OF TEXAS,
APPELLEE

*On appeal from the County Criminal Court No. 10*
*Dallas County, Texas*
*Cause No. MA13-71667-L*

## STATE'S BRIEF

*Counsel of Record:*

SUSAN HAWK
CRIMINAL DISTRICT ATTORNEY
DALLAS COUNTY, TEXAS

KAREN R. WISE
ASSISTANT DISTRICT ATTORNEY
STATE BAR NO. 21810200
FRANK CROWLEY COURTS BUILDING
133 N. RIVERFRONT BLVD., LB-19
DALLAS, TEXAS 75207-4399
(214) 653-3637
karen.wise@dallascounty.org

*Attorneys for the State of Texas*

# TABLE OF CONTENTS

TABLE OF CONTENTS ......................................................................................................ii

INDEX OF AUTHORITIES ..............................................................................................iv

STATEMENT OF THE CASE ............................................................................................ 1

SUMMARY OF ARGUMENT............................................................................................ 1

ARGUMENT......................................................................................................................... 3

    RESPONSE TO POINT 1.............................................................................................. 3

        **THE EVIDENCE IS SUFFICIENT TO PROVE THAT APPELLANT VIOLATED THE PROTECTIVE ORDER.**

    RESPONSE TO POINT 2.............................................................................................. 17

        **THE TRIAL COURT DID NOT EGREGIOUSLY HARM APPELLANT BY FAILING TO INSTRUCT THE JURY THAT IT HAD TO FIND THAT APPELLANT ATTENDED THE PROTECTIVE ORDER PROCEEDING.**

    RESPONSE TO POINT 3.............................................................................................. 17

        **THE TRIAL COURT DID NOT EGREGIOUSLY HARM APPELLANT BY FAILING TO DEFINE "FAMILY" AND "HOUSEHOLD" IN THE JURY CHARGE.**

    RESPONSE TO POINT 4.............................................................................................. 23

        **THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN OVERRULING APPELLANT'S OBJECTIONS TO EVIDENCE OF EXTRANEOUS OFFENSES.**

    RESPONSE TO POINT 5.............................................................................................. 38

        **THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN OVERRULING APPELLANT'S MOTION FOR MISTRIAL FOR LACK OF NOTICE OF CERTAIN EXTRANEOUS OFFENSES.**

RESPONSE TO POINT 6..............................................................................38

**THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN OVERRULING APPELLANT'S REQUEST FOR A JURY INSTRUCTION TO DISREGARD FOR LACK OF NOTICE OF CERTAIN ALLEGED EXTRANEOUS OFFENSES.**

CERTIFICATE OF SERVICE AND WORD-COUNT COMPLIANCE..........................48

# INDEX OF AUTHORITIES

**Cases**

*Abdnor v. State*,
   871 S.W.2d 726 (Tex. Crim. App. 1994) ...................................................................... 18

*Almanza v. State*,
   686 S.W.2d 157 (Tex. Crim. App. 1984) ...................................................................... 18

*Alvarado v. State*,
   912 S.W.2d 199 (Tex. Crim. App. 1995) ...................................................................... 18

*Bonham v. State*,
   680 S.W.2d 815 (Tex. Crim. App. 1984) ...................................................................... 10

*Brooks v. State*,
   323 S.W.3d 893 (Tex. Crim. App. 2010) ........................................................................ 8

*Delgado v. State*,
   235 S.W.3d 244 (Tex. Crim. App. 2007) ...................................................................... 19

*Dillard v. State*,
   No. 05-00-01745-CR, 2002 Tex. App. LEXIS 9151 (Tex. App. – Dallas Dec. 20, 2002,
   no pet.) (not designated for publication) ....................................................................... 12

*Edwards v. State*,
   106 S.W.3d 833 (Tex. App. – Dallas 2003, pet. ref'd) ................................................. 43

*Ethington v. State*,
   819 S.W.2d 854 (Tex. Crim. App. 1991) ...................................................................... 34

*Gardner v. State*,
   No. 05-05-00750-CR, 2006 Tex. App. LEXIS 4417 (Tex. App. – Dallas May 24, 2006,
   no pet.) (mem. op., not designated for publication) ......................................... 12, 13, 21

*Gaw v. State*,
   No. 05-08-00463-CR, 2009 Tex. App. LEXIS 9652 (Tex. App. – Dallas Dec. 17, 2009,
   no pet.) (not designated for publication) ........................................................... 11, 12, 13

*Green v. State*,
   934 S.W.2d 92 (Tex. Crim. App. 1996) ........................................................................ 32

*Hailey v. State,*
    87 S.W.3d 118 (Tex. Crim. App. 2002) ...................................................... 30

*Harris v. State,*
    784 S.W.2d 5 (Tex. Crim. App. 1989) ........................................................ 29

*Harvey v. State,*
    78 S.W.3d 368 (Tex. Crim. App. 2002) .................................................. 19, 20

*Hawkins v. State,*
    135 S.W.3d 72 (Tex. Crim. App. 2004) ...................................................... 44

*Hinojosa v. State,*
    *4 S.W.3d 240 (Tex. Crim. App. 1999)* ...................................................... 44

*Hoopes v. State,*
    438 S.W.3d 93 (Tex. App. – Amarillo 2014, pet. ref'd) ....................... 14, 15

*Hudson v. State,*
    675 S.W.2d 320 (Tex. App. – Dallas 1984, pet. ref'd) ............................. 8, 10

*Hull v. State,*
    67 S.W.3d 215 (Tex. Crim. App. 2002) ...................................................... 47

*Hutch v. State,*
    922 S.W.2d 166 (Tex. Crim. App. 1996) .................................................... 18

*Jackson v. Virginia,*
    443 U.S. 307 (1979) .................................................................................... 8

*Johnson v. State,*
    571 S.W.2d 170 (Tex. Crim. App. 1978) .................................................... 10

*Johnson v. State,*
    967 S.W.2d 410 (Tex. Crim. App. 1998) ...................................................... 8

*King v. State,*
    953 S.W.2d 266 (Tex. Crim. App. 1997) .................................................... 36

*Kitchens v. State,*
    823 S.W.2d 256 (Tex. Crim. App. 1991) ................................................ 13, 21

*Ladd v. State,*
    3 S.W.3d 547 (Tex. Crim. App. 1999) .................................................... 43, 44

*Lockhart v. Nelson*,
   488 U.S. 33 (1988) ................................................................................................ 8

*Middleton v. State*,
   125 S.W.3d 450 (Tex. Crim. App. 2005) ............................................................ 17

*Montez v. State*,
   975 S.W.2d 370 (Tex. App. – Dallas 1998, no pet.) .......................................... 36

*Montgomery v. State*,
   810 S.W.2d 372 (Tex. Crim. App. 1990) ....................................................... 32, 33

*Morales v. State*,
   32 S.W.3d 862 (Tex. Crim. App.  2000) ............................................................ 36

*Morgan v. State*,
   Nos. 10-10-00367-CR & 10-10-00371-CR, 2011 Tex. App. LEXIS 8133 (Tex. App. –
   Waco Oct. 12, 2011, no pet.) (mem. op., not designated for publication) ............. 19, 22

*Motilla v. State*,
   78 S.W.3d 352 (Tex. Crim. App. 2002) .............................................................. 36

*Neal v. State,*
   256 S.W.3d 264 (Tex. Crim. App. 2008) ............................................................ 31

*Ovalle v. State*,
   13 S.W.3d 774 (Tex. Crim. App. 2000) .............................................................. 46

*Purtell v. State*,
   761 S.W.2d 360 (Tex. Crim. App. 1988) ............................................................ 30

*Richardson v. State*,
   879 S.W.2d 874 (Tex. Crim. App. 1993) ............................................................ 18

*Roberts v. State*,
   849 S.W.2d 407 (Tex. App. – Fort Worth 1993, pet. ref'd) ............................... 18

*Santellan v. State*,
   939 S.W.2d 155 (Tex. Crim. App. 1997) ............................................................ 33

*Simpson v. State*,
   119 S.W.3d 262 (Tex. Crim. App. 2003) ............................................................ 46

*State v. Boyd*,
   202 S.W.3d 393 (Tex. App. – Dallas 2006, pet. ref'd) ....................................... 43

*Taylor v. State*,
106 S.W.3d 827 (Tex. App. – Dallas 2003, no pet.) ........................................8

*Williams v. State*,
547 S.W.2d 18 (Tex. Crim. App. 1977) ........................................................19

*Wise v. State*,
364 S.W.3d 900 (Tex. Crim. App. 2012) ........................................................8

*Yazdchi v. State*,
428 S.W.3d 831 (Tex. Crim. App. 2014) ......................................................29

*Young v. State*,
283 S.W.3d 854 (Tex. Crim. App. 2009) ........................................................8

**Statutes**

Tex. Code Crim. Proc. Ann. art. 36.14 (West 2007) ......................................19

Tex. Fam. Code Ann. § 71.003 (West 2014)...............................................9, 21

Tex. Fam. Code Ann. § 82.043 (West 2014)...................................................20

Tex. Fam. Code Ann. § 85.001(a) (West 2008) .............................................15

Tex. Fam. Code Ann. § 85.006(a) (West 2014) .............................................15

Tex. Fam. Code Ann. § 85.022(b) (West 2014) .............................................16

Tex. Fam. Code Ann. § 85.025(a) (West 2014) .............................................16

Tex. Fam. Code Ann. § 85.026 (West 2014)...................................................16

Tex. Fam. Code Ann. § 85.042(a) (West 2014) .............................................16

Tex. Pen. Code Ann. § 25.07 (West Supp. 2014) ........................................1, 21

Tex. Pen. Code Ann. § 25.07(a)(2)(C) (West Supp. 2014) ...............................9

Tex. Pen. Code Ann. § 25.07(b) (West Supp. 2014).........................................9

**Other Authorities**

42 George E. Dix & Robert O. Dawson, *Criminal Practice and Procedure § * 36.11
(**Texas** Practice 1995)...............................................................................19

**Rules**

Tex. R. App. P. 33.1(a) ...................................................................................... 29, 47

Tex. R. App. P. 33.1(a)(1)(A) ................................................................................ 31

Tex. R. App. P. 44.2(b) .......................................................................................... 36

Tex. R. Evid. 103(a)(1) .......................................................................................... 31

Tex. R. Evid. 401 .................................................................................................... 32

Tex. R. Evid. 402 .................................................................................................... 32

Tex. R. Evid. 403 .................................................................................................... 32

Tex. R. Evid. 404(b) .......................................................................................... 30, 33

**TO THE HONORABLE COURT OF APPEALS:**

The State of Texas submits this brief in reply to the brief of Appellant.

## STATEMENT OF THE CASE

After pleading not guilty, Appellant was convicted by a jury of violation of a protective order. (CR1: 16). *See* Tex. Pen. Code Ann. § 25.07 (West Supp. 2014). The court set punishment at 365 days' confinement in the Dallas County Jail and a fine of $150. (CR1: 16). The trial court certified that Appellant has the right to appeal. (CR1: 7). Appellant's notice of appeal was timely filed. (CR1: 8).

## SUMMARY OF ARGUMENT

Response to Point 1: The evidence is sufficient to support Appellant's conviction for violation of a protective order. The State proved that Appellant was a member of the complainant's family since he was the father of her child. The State proved that Appellant was aware of the protective order. The language in the protective order meets the requirements of chapter 85 and is sufficient to support the jury's finding beyond a reasonable doubt that the protective order was issued under the authority of chapter 85.

Response to Point 2: Although the jury charge did not include a definition of the term "in violation of an order issued under Section 6.504 or Chapter 85,

1

Family Code [or] under Article 17.292, Code of Criminal Procedure," no egregious error occurred because the term means "in violation of an order that was issued under one of those statutes at a proceeding that the defendant attended or at a hearing held after the defendant received service of the application for a protective order and notice of the hearing." The protective order itself noted that Appellant did not appear at the hearing but he was "duly and properly cited."

Response to Point 3: Although the jury charge did not include a definition of the terms "family" or "household," no egregious error occurred because Appellant and the complainant had a child together. The Family Code's definition of family is not significantly different from the commonly known definition. The omission of the definition of "household" was not harmful as there was no evidence that Appellant and Sheppard were part of the same household.

Response to Point 4: The court did not abuse its discretion in overruling Appellant's objections concerning extraneous offenses. Appellant's objections regarding improper character evidence and relevance were properly overruled, and Appellant did not timely or specifically object to the remainder of the complainant's testimony regarding the extraneous offenses.

Response to Point 5: The court did not abuse its discretion in denying Appellant's motion for mistrial. Appellant asked for a mistrial so that the defense investigator could go through call logs and see if he could find records of certain

2

emails and phone calls. However, the purpose of a mistrial is to remedy extreme circumstances involving incurable prejudice, not to allow one party to go look for evidence. Therefore, the mistrial was properly denied.

Response to Point 6: The court did not abuse its discretion in denying Appellant's request for an instruction to disregard because the jury first heard the testimony in question more than 18 hours before Appellant requested the instruction to disregard. The court could reasonably have determined that no instruction to disregard would remove the evidence from the jury's mind and mentioning the specific evidence in question would only have emphasized it.

## ARGUMENT

## RESPONSE TO POINT 1

**THE EVIDENCE IS SUFFICIENT TO PROVE THAT APPELLANT VIOLATED THE PROTECTIVE ORDER.**

Appellant claims that the evidence is legally insufficient to prove that he violated the protective order. Appellant is incorrect.

**Relevant Facts**

Jennifer Sheppard, the complainant, testified that Appellant is her child's father. (RR2: 113). Sheppard met Appellant in December 2009 and they had a sexual relationship that resulted in the birth of her son Jahene, who was 2 years old

3

at the time of trial. (RR2: 115-16). Sheppard was concerned for the safety of herself and Jahene because Appellant sent emails to her at work saying that he was going to kill her. (RR2: 116-17,119). These email threats upset Sheppard very much. (RR2: 118). Sheppard filed for the protective order in child support court. (RR2: 119-20). Sheppard recalled that Appellant was present during the proceeding when the protective order was issued. (RR2: 120). Sheppard had personal knowledge that Appellant knew of the protective order. (RR2: 120). The protective order was admitted into evidence without objection. (RR2: 121-22). The order prohibited Appellant from "communicating in any manner" with Sheppard or her son Jahene. (RR2: 121-22; State's Exhibit 1).

On December 2, 2013, Sheppard was at work as a medical clerk at the Dallas VA Medical Center in Dallas County. (RR2: 123). Around 3:30 p.m., Appellant called Sheppard and said, "[D]o not hang up the phone." (RR2: 125). Sheppard hung up the phone. (RR2: 125). Sheppard recognized Appellant's voice and knew it was him calling her. (RR2: 125-26). Sheppard stated, "If y'all dated someone that - - for so long or talked to, you're going to recognize their voice. Even though they're not in front of you, you know who calls you . . . You don't have to see them, you know who calls." (RR3: 32-33). Appellant knew Sheppard's work phone number because she had given it to him. (RR2: 129).

Sheppard also recognized that Appellant was in her building because the main number of the hospital showed on her caller ID. (RR2: 125-26).

Sheppard did not believe this was an accidental phone call because Appellant would "call just to harass [her], just to make [her] upset" if she did not respond to him through email. (RR2: 129). Appellant had communicated with Sheppard several times before through email. (RR2: 130). Sheppard knew the emails were from him because of the personal details. (RR2: 131). Sheppard did not want to talk to Appellant and did not reply to the emails because he would start harassing her and making threats. (RR2: 131). Sheppard called the VA police, showed them the protective order, and said that Appellant was inside the building. (RR2: 126; RR3: 19). Sheppard kept a copy of the protective order in her desk drawer in case Appellant showed up at the clinic "like he always does." (RR2: 126-28). Appellant was a veteran. (RR2: 127).

VA Hospital Police Officer Steven Girard testified that on December 2, 2013, he took a report from Sheppard about this phone call she had received from her ex-boyfriend. (RR3: 35-36). Girard noticed that Sheppard was visibly upset and still thought Appellant was in the building. (RR3: 37). Sheppard recalled that after she made her report to the VA officers, the officers "went towards his clinic," but the clerk stated "that he left for the day" so the officers did not find Appellant. (RR3: 25). Officer Girard confirmed that all six of the VA officers looked for

5

Appellant but did not find him. (RR3: 37). The VA Hospital had nine floors, with lots of rooms and hallways, so it was not possible for six officers on patrol to have eyes on the entire building. (RR3: 44). It took the officers about 15 minutes to reach Sheppard and talk to her, and it would have only taken someone about 5 minutes to leave the VA Hospital. (RR3: 38). It was possible for Appellant to walk in and walk out of the VA Hospital with no one seeing him. (RR3: 45). Girard stated that the VA Hospital is a busy place around 3:00 p.m. (RR3: 46-47).

After receiving this phone call from Appellant, Sheppard was nervous and afraid, so she left work early. (RR3: 18-19). Sheppard's co-workers walked Sheppard to her car. (RR3: 25-26). Sheppard denied that the VA officers offered to escort her from work. (RR3: 25-26). Officer Girard first said he offered Sheppard an escort to her car, but she did not call him for an escort. (RR3: 41). After reading his report, Officer Girard corrected himself to say he advised her to get an escort when she left work. (RR3: 43). Officer Girard did not pull video surveillance because he did not have access to those cameras. (RR3: 39). Officer Girard called the Dallas Police but was told he just had to make a report because there were no witnesses that Appellant had made the phone call. (RR3: 37).

Dallas Police Officer Barbara Chandler took Sheppard's report on December 3, 2013, for this offense that had occurred the day before. (RR2: 90-91,93). Officer Chandler stated that she would not have made a report for violation of a

6

protective order if Sheppard did not have a valid protective order. (RR2: 94). Sheppard gave Detective Chandler Appellant's appointment list showing that he had an appointment on December 2. (RR3: 29-30).

Sheppard stated that she did not look at Appellant during her testimony because he scares Sheppard. (RR3: 20). Sheppard confirmed that Appellant had not contacted her since December 2. (RR3: 32).

Dallas Police Detective David Weisskopf, a domestic violence detective, testified that he contacted Sheppard, had her fill out an affidavit, and filed the case. (RR2: 100). Detective Weisskopf also obtained a report on this incident from the police department at the VA Hospital. (RR2: 100; RR3: 51). Detective Weisskopf determined that Sheppard's protective order was valid and that Appellant had communicated with her by making a phone call. (RR2: 100, 103-104). Detective Weisskopf did not need to obtain any phone records "to make [his] case" because Sheppard provided him with information that an offense had occurred, he had no reason to doubt what Sheppard told him, and pulling phone records would not have shown who made the phone call. (RR2: 110-11).

**The Evidence is Sufficient**

When a claim is made that the evidence is insufficient, this Court's standard of review is whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the

7

crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Appellate courts conducting a sufficiency review consider all of the evidence, whether or not properly admitted. *Lockhart v. Nelson*, 488 U.S. 33, 41-42 (1988); *Johnson v. State*, 967 S.W.2d 410, 411-12 (Tex. Crim. App. 1998); *Taylor v. State*, 106 S.W.3d 827, 830 (Tex. App. – Dallas 2003, no pet.).

Further, such a review recognizes that it is within the factfinder's exclusive realm "to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic to ultimate facts." *Young v. State*, 283 S.W.3d 854, 861 (Tex. Crim. App. 2009) (*citing Jackson*, 443 U.S. at 317-19). The jury as factfinder is free to accept or reject any and all evidence presented by either side. *Hudson v. State*, 675 S.W.2d 320, 322 (Tex. App. – Dallas 1984, pet. ref'd). Under this standard, the evidence in this case, as set out above, is sufficient to show that Appellant committed this offense as alleged in the information.

The information charged that Appellant did the following:

> then and there intentionally and knowingly communicate in any manner with JENNIFER SHEPPARD, hereinafter called complainant, a protected individual and a member of the family and household, and not through an attorney or person appointed by the court, by CONTACTING COMPLAINANT VIA TELEPHONE, in violation of an order issued by the 330TH JUDICIAL DISTRICT COURT of DALLAS County, TEXAS, signed by the Court on THE 5TH DAY OF NOVEMBER, 2013, under authority of Section 6.504 and Chapter 85

of the Family Code and Article 17.292 of the Code of Criminal Procedure, and said communication was prohibited by the aforesaid order.

(CR1: 10). Appellant argues that the evidence was insufficient to prove: (1) that he was a member of the complainant's family and household; (2) that he had notice of the protective order or attended the protective order proceeding; and (3) that the protective order was issued under the authority of the alleged statutes. (Appellant's brief at 30-34).

*(1) Appellant was a member of the complainant's family.*

The statute prohibiting violations of a protective order, Tex. Pen. Code Ann. § 25.07(a)(2)(C) (West Supp. 2014), provides that a person commits an offense if, in violation of an order issued one of the listed statutes, the person knowingly or intentionally communicates "in any manner with the protected individual or a member of the family or household except through the person's attorney or a person appointed by the court, if the violation is of an order described by this subsection and the order prohibits any communication with a protected individual or a member of the family or household." Tex. Pen. Code Ann. § 25.07(b) (West Supp. 2014) provides that for purposes of the statute, "family" has the meaning assigned by Chapter 71 of the Family Code. Tex. Fam. Code Ann. § 71.003 (West 2014) states that the term "Family" includes "individuals who are the parents of the same child, without regard to marriage."

9

In the instant case, Jennifer Sheppard testified that Appellant was her child's father. (RR2: 113). Sheppard met Appellant in December 2009 and they had a sexual relationship that resulted in the birth of her son Jahene. (RR2: 115-16). Appellant argues that there was no other evidence that he was a member of the complainant's family because the State presented no DNA evidence and Appellant did not acknowledge his paternity. (Appellant's brief at 29). But that is beside the point. Sheppard's testimony, if believed by the jury, was sufficient to prove that Appellant was her child's father and no other evidence was needed.

The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony so that the trier of fact may accept or reject any or all of the testimony of any witness. *Bonham v. State*, 680 S.W.2d 815, 819 (Tex. Crim. App. 1984); *Johnson v. State*, 571 S.W.2d 170, 173 (Tex. Crim. App. 1978); *Hudson v. State*, 675 S.W.2d 320, 322 (Tex. App. – Dallas 1984, pet. ref'd). In the instant case, the jury exited the courtroom to begin deliberations at 1:25 p.m. and returned to the courtroom with a verdict against Appellant at 1:50 p.m. (RR3: 75). Because the jury found Appellant guilty of the offense so quickly, the jury clearly found Sheppard to be credible and believed that Appellant was a member of Sheppard's family. The evidence as presented was sufficient to establish that Appellant was the father of Sheppard's child and, therefore, was a member of her family.

10

*(2) Appellant was aware of the protective order.*

Appellant argues that there was no evidence that he knowingly or intentionally violated the protective order because there was no evidence that he had notice of the protective order or was served with a copy of the protective order. Appellant notes that the protective order states that he was not present when the protective order was granted. The State acknowledges that the protective order states that Appellant "did not appear and wholly made default" at the protective order hearing. (State's Exhibit 1, page 1). However, the protective order also states that Appellant did not appear "although duly and properly cited." (State's Exhibit 1, page 1). The protective order further states that "all necessary prerequisites of the law have been satisfied." (State's Exhibit 1, page 1). Thus, the protective order itself states that Appellant was duly and properly cited and all necessary prerequisites of the law were satisfied.

In *Gaw v. State*, No. 05-08-00463-CR, 2009 Tex. App. LEXIS 9652, at *18 (Tex. App. – Dallas Dec. 17, 2009, no pet.) (not designated for publication), the protective order stated that Gaw had been "duly and properly cited," that he did not appear, and that "all necessary prerequisites of the law have been satisfied and that this Court has jurisdiction over the parties and the subject matter of this cause." This Court determined that the recitals in the order that Gaw was duly and properly cited and failed to appear, and that the court had jurisdiction over the parties, was

11

"evidence the protective order was valid and issued after notice and hearing as required by the family code." *Gaw*, 2009 Tex. App. LEXIS 9652, at *18 (citing *Dillard v. State*, No. 05-00-01745-CR, 2002 Tex. App. LEXIS 9151, at *3, *5 (Tex. App. – Dallas Dec. 20, 2002, no pet.) (not designated for publication)). The language in the instant case is identical to that in *Gaw*.

Moreover, Sheppard testified that based on her personal knowledge, Appellant "knew of this protective order." (RR2: 120). This testimony by Sheppard was sufficient to prove that Appellant knew the protective order was in place. Thus, when Appellant violated the protective order by calling Sheppard, he did so knowingly and intentionally.

### *(3) The order was issued under chapter 85 of the Family Code.*

Appellant claims the evidence is insufficient to prove that the protective order was issued under the authority of the statutes set out in § 25.07. The information in this case alleged that the protective order was issued "under authority of Section 6.504 and Chapter 85 of the Family Code and Article 17.292 of the Code of Criminal Procedure." (CR1: 10). Although the statutes were alleged conjunctively in the information, the State was only required to prove the protective order was issued under any one of them. *See Gardner v. State*, No. 05-05-00750-CR, 2006 Tex. App. LEXIS 4417, at *5 (Tex. App. – Dallas May 24, 2006, no pet.) (mem. op., not designated for publication) (citing *Kitchens v. State*,

12

823 S.W.2d 256, 258 (Tex. Crim. App. 1991) (holding that "although the indictment may allege the differing methods of committing the offense in the conjunctive, it is proper for the jury to be charged in the disjunctive."). Because the hypothetically correct charge in this case would have submitted the statutory authority for the protective order disjunctively, the verdict should be sustained if the evidence is sufficient to support a finding of guilt under any of the theories submitted. *Gardner*, 2006 Tex. App. LEXIS 4417, at *5; *Kitchens*, 823 S.W.2d at 258.

Two cases are helpful in determining whether the State has sufficiently proven that the protective order was issued under the authority of any of the listed statutes. In *Gaw*, 2009 Tex. App. LEXIS 9652, the defendant was charged by information with violating a protective order that was issued "under authority of Section 6.504 and Chapter 85 of the Family Code of Texas." *Gaw* at *5-6. The State presented no direct testimony that the protective order was issued under the authority of chapter 85 of the family code. *Id*. at *15. Instead, the order itself was admitted into evidence. *Id*. The order specifically stated that family violence had occurred and is likely to occur in the future, as required by section 85.001(a). *Id*. at *15. It also stated that Gaw had been duly and properly cited, and that he did not appear. *Id*. (citing Tex. Fam. Code § 85.006(a)). It prohibited the defendant from committing family violence, communicating directly with the victim in a

13

threatening or harassing manner, communicating a threat through any person to the victim, going to or near her residence or place of employment, and possessing a firearm or ammunition. *Id*. at *15-16 (citing Tex. Fam. Code § 85.022(b)). It was effective for two years. *Id*. at *16 (citing Tex. Fam. Code § 85.025(a)). It required that a copy of the order be delivered to the sheriff and the appropriate constable of the county. *Id*. (citing Tex. Fam. Code § 85.042).

In addition to these findings and orders in the protective order itself, the trial court, at the request of the State, took judicial notice of chapter 85 of the Family Code and incorporated a photocopy of the full text of chapter 85 into the court's jury charge. *Id.* This Court held that, even with no direct testimony regarding under what authority the order issued, the language in the order plus the court's judicial notice of chapter 85 supported the jury's finding beyond a reasonable doubt that the protective order was issued under the authority of chapter 85. *Id.* at *17.

Conversely, in *Hoopes v. State*, 438 S.W.3d 93, 95 (Tex. App. – Amarillo 2014, pet. ref'd), Hoopes was indicted for violating a protective order, but the indictment did not allege the statutory authority under which the protective order was issued, and the evidentiary record was "silent on the question." The Amarillo Court of Appeals held the evidence was insufficient on this silent record. *Id*. at 96. The court specified that an element of the offense of the violation of a protective

14

order is proof of the specific statutory provision under which the protective order was issued, and that the State failed to prove under what provision the order had been issued. *Id.* at 95-96. The court distinguished the case from *Gaw*, noting that the protective order in *Gaw* had, on its face, made the findings required by chapter 85 and that the trial court took judicial notice of chapter 85 of the Family Code and attached a photocopy of it to the jury charge, while "[n]othing similar occurred here." *Hoopes*, 438 S.W.3d at 96.

In the instant case, the evidence is more like that in *Gaw* than in *Hoopes*, and it is therefore sufficient to show that the protective order was issued under the authority of chapter 85 of the Family Code. While there was no direct testimony regarding under what authority the order issued, the provisions in the order itself indicated it was issued under chapter 85. The protective order, which was admitted into evidence, found that "family violence has occurred" and "family violence is likely to occur in the future." (State's Exhibit 1, page 1). These findings are required for a protective order involving family violence under Tex. Fam. Code Ann. § 85.001(a) (West 2008).

The order also stated that Appellant had been "duly and properly cited," and that he did not appear. *See* Tex. Fam. Code Ann. § 85.006(a) (West 2014). The order prohibited Appellant from, among other things, committing family violence, communicating directly with Sheppard in a threatening or harassing manner,

15

communicating a threat through any person to her, going to or near her residence or place of employment, going to or near her son's child-care facilities or schools, or possessing a firearm or ammunition. These prohibitions are authorized by Tex. Fam. Code Ann. § 85.022(b) (West 2014). The order was effective for two years, which is the maximum period of time allowed by Tex. Fam. Code Ann. § 85.025(a) (West 2014). The order included the warnings required by Tex. Fam. Code Ann. § 85.026 (West 2014). It also required that a copy of the order be delivered to the chief of police of the municipality of Dallas County, in accordance with Tex. Fam. Code Ann. § 85.042(a) (West 2014). Thus, the protective order, on its face, proved that it was issued under the authority of chapter 85 of the Family Code.

While the State in the instant case did not ask the court to take judicial notice of chapter 85 and the court did not attach a copy of chapter 85 to its jury charge, this distinction from *Gaw* does not render the evidence insufficient. Had the jury received a hypothetically correct jury charge setting out the provisions of chapter 85 that were applicable to this case, the order contained all the findings and orders necessary for the jury to conclude that it was issued under the authority of chapter 85.

The language in the protective order meets the requirements of chapter 85 and is sufficient to support the jury's finding beyond a reasonable doubt that the

16

protective order was issued under the authority of chapter 85. This point is without merit and should be overruled.

## RESPONSE TO POINT 2

**THE TRIAL COURT DID NOT EGREGIOUSLY HARM APPELLANT BY FAILING TO INSTRUCT THE JURY THAT IT HAD TO FIND THAT APPELLANT ATTENDED THE PROTECTIVE ORDER PROCEEDING.**

## RESPONSE TO POINT 3

**THE TRIAL COURT DID NOT EGREGIOUSLY HARM APPELLANT BY FAILING TO DEFINE "FAMILY" AND "HOUSEHOLD" IN THE JURY CHARGE.**

In Points 2 and 3, Appellant claims that the court egregiously harmed him by failing to instruct the jury that it had to find that Appellant attended the protective order proceeding and by failing to define the terms "family" and "household" in the charge. The State responds that the court charge as given did not egregiously harm Appellant.

**There was no egregious error in the jury charge.**

Appellant made no objection to the jury charge. (RR3: 59). The first step in a jury charge review is to determine whether error exists in the charge. *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2005). If error is found, the appellate court should only then analyze that error for harm. *Id.* Because

17

Appellant made no objection to the jury charge, he must claim that the error was "fundamental" and "he will obtain a reversal only if the error is so egregious and created such harm that he 'has not had a fair and impartial trial' – in short 'egregious harm.'" *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). An error in the charge is considered egregious if it "affects 'the very basis of the case,' deprives the defendant of a 'valuable right,' or 'vitally affects a defensive theory.'" *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996) (citing *Almanza*, 686 S.W.2d at 172). The actual degree of harm must be considered in light of the entire jury charge, the state of the evidence, the argument of counsel, and any other relevant information revealed by the record. *Id.* The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused. *Almanza*, 686 S.W.2d at 174; *Roberts v. State*, 849 S.W.2d 407, 410 (Tex. App. – Fort Worth 1993, pet. ref'd).

Appellant has the burden of persuasion in proving the requisite degree of harm. *Alvarado v. State*, 912 S.W.2d 199, 216-17 (Tex. Crim. App. 1995); *Abdnor v. State*, 871 S.W.2d 726, 732 (Tex. Crim. App. 1994). Moreover, in making a determination as to harm, the reviewing court "may presume that the jury acted rationally, at least absent a showing to the contrary." *Richardson v. State*, 879 S.W.2d 874, 882 (Tex. Crim. App. 1993).

The purpose of a jury charge is to inform the jury of the applicable law and guide them in its application to the case. *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007); *Williams v. State*, 547 S.W.2d 18, 20 (Tex. Crim. App. 1977). The trial court is required to charge the jury on the "law applicable to the case." Tex. Code Crim. Proc. Ann. art. 36.14 (West 2007). This "requires that the jury be instructed concerning each element of the offense or offenses charged. It also requires that each statutory definition that affects the meaning of an element of the offense must be given to the jury." 42 George E. Dix & Robert O. Dawson, *Criminal Practice and Procedure § 36.11*, at 536 (Texas Practice 1995).

### 1. Appellant knew of the order's existence.

Appellant cites *Morgan v. State*, Nos. 10-10-00367-CR & 10-10-00371-CR, 2011 Tex. App. LEXIS 8133, at *7 (Tex. App. – Waco Oct. 12, 2011, no pet.) (mem. op., not designated for publication), for the proposition that although the specific language of § 25.07 does not require a finding that Appellant attended the protective order hearing, this element in some form is required to be included in the application paragraph of the jury charge. *Morgan* in turn cites *Harvey v. State*, 78 S.W.3d 368, 372-73 (Tex. Crim. App. 2002). In *Harvey*, the Court of Criminal Appeals determined that a jury charge regarding the violation of a protective order should include a definition of the term "in violation of an order issued under Section 6.504 or Chapter 85, Family Code [or] under Article 17.292, Code of

19

Criminal Procedure." *Harvey*, 78 S.W.3d at 373. The Court specified that the term means "in violation of an order that was issued under one of those statutes at a proceeding that the defendant attended or at a hearing held after the defendant received service of the application for a protective order and notice of the hearing." *Id*.

The State recognizes that such a definition was not included in the jury charge in the instant case. Therefore, the charge was erroneous. But the failure to include such a definition in this charge did not egregiously harm Appellant because the protective order itself noted that Appellant did not appear at the hearing but he was "duly and properly cited." (State's Exhibit 1, page 1). Tex. Fam. Code Ann. § 82.043 (West 2014) provides that notice of an application for protective order must be served on a respondent and the respondent must receive a copy of the application.

Because the jury found that Appellant knowingly and intentionally violated the protective order, the jury necessarily found that Appellant knew about the protective order. Thus, if the jury had been instructed that it had to determine that Appellant violated an order that was issued at a proceeding Appellant attended or at a hearing held after Appellant received service of the application for a protective order and notice of the hearing, the jury's verdict would have been the same. Appellant cannot have been harmed by the lack of an instruction regarding an issue

that was proven by the evidence and that the jury would necessarily have found to have occurred.

### 2. *Missing definitions in the charge were not egregiously harmful.*

Appellant correctly argues that the jury charge did not include definitions of the terms "family" or "household," as referenced in Tex. Pen. Code Ann. § 25.07 and as defined in Tex. Fam. Code Ann. § 71.003. Because each statutory definition that affects the meaning of an element of the offense must be given to the jury, the court erred in failing to do so. But, again, the failure to include the two definitions in this charge did not egregiously harm Appellant.

Although the jury charge stated that to find Appellant guilty, the jury must find that Appellant was a member of the complainant's family and household, the State was only required to prove Appellant was a member of the complainant's family or household. *See Kitchens*, 823 S.W.2d at 258 (holding that "although the indictment may allege the differing methods of committing the offense in the conjunctive, it is proper for the jury to be charged in the disjunctive.").. A hypothetically correct charge in this case would have alleged "family or household." *See Gardner*, 2006 Tex. App. LEXIS 4417, at * 5; *Kitchens*, 823 S.W.2d at 258.

Section 71.003 states that the term "Family" includes "individuals who are the parents of the same child, without regard to marriage." The Family Code's

21

definition of family is not significantly different from the commonly known definition. Because Appellant and Sheppard had a child together, they were a type of family, even if they were not married. And the omission of the definition of "household" was not harmful as there was no evidence that Appellant and Sheppard were part of the same household. *See Morgan*, 2011 Tex. App. LEXIS 8133, at *24-25.

Sheppard testified that Appellant was the father of her child. (RR2: 113). There was no contrary evidence to dispute this fact. Sheppard testified that she had personal knowledge that Appellant knew about the protective order. (RR2: 120). There was no contrary evidence to dispute this fact. The protective order itself noted that Appellant did not appear at the hearing but he was "duly and properly cited." (State's Exhibit 1, page 1). There was no contrary evidence to dispute this fact.

During argument, defense counsel did not argue that Appellant was not the father of Sheppard's child. Defense counsel did not argue that Appellant was not aware of the protective order. Instead, defense counsel stated that the issue was "whether or not Mr. Mavero made that phone call." (RR3: 71). Defense counsel also argued that Sheppard lied when she said the VA police did not offer to escort her to her car and that she lied about what she put in her written statement. (RR3: 69-70).

Because the errors in the jury charge involved issues that were not even significant enough for defense counsel to dispute, and because those issues were proven by Sheppard's uncontradicted testimony, Appellant was not egregiously harmed by the court's error. Points 2 and 3 are without merit and should be overruled.

**RESPONSE TO POINT 4**

**THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN OVERRULING APPELLANT'S OBJECTIONS TO EVIDENCE OF EXTRANEOUS OFFENSES.**

Appellant claims that the court abused its discretion in overruling his objections concerning extraneous offenses. The State responds that the court did not abuse its discretion in admitting this evidence because Appellant's objections regarding improper character evidence and relevance were properly overruled.

**Relevant Facts**

While the prosecutor was questioning Sheppard about whether Appellant had accidentally made the phone call in question, the prosecutor asked about other instances where Appellant had contacted her, as follows:

Q. Do you believe that this was an accidental phone call?

A. No.

Q. Why don't you believe that?

23

A. Because he always called, like, he'll just call just to harass me, just to make me upset. That's how he is. If I don't respond to him through e-mail, he will call.

Q. Now, he's communicated with you, obviously, several times before; is that right?

A. Correct.

[DEFENSE COUNSEL]: Objection, Your Honor. Character -- improper character evidence.

THE COURT: Overrule that objection.

Q. [By [prosecutor]] He's communicated with you several times before?

A. Yes.

Q. But you didn't immediately go to the authorities every time he did that, did you?

A. No, because it would be fake e-mail addresses. It would be very hard for me to prove that it was him.

Q. So how did you know it was him?

A. Because the things he says in his e-mail make me believe that it's him and I know it's him. Nobody else talks like that except him.

Q. Talks like what?

A. Like, call me crazy and –

[DEFENSE COUNSEL]: Objection, Your Honor. Relevance.

THE COURT: I'll sustain the objection.

A. [Continuing] Like, he –

24

THE COURT: Hold on, ma'am. Wait for the next question.

Q. [By [Prosecutor]] Within these e-mails, were there any personal details inside of them that led you to believe, okay, I know who I'm dealing with in this e-mail?

A. Yes.

[DEFENSE COUNSEL]: Objection, Your Honor. This is still relevance.

THE COURT: As to that question, I'll overrule.

Q. [By Prosecutor]] What personal information was contained in those e-mails that you personally know that was expressed through those e-mails?

A. Like, crazy. Nobody says that except him. And he'll, like, hey, crazy, call me, please. He's begging me to call him and I wouldn't call him. He say, please, please reply to me, and I won't reply.

Q. Why won't you reply?

A. Because I don't -- I didn't want to talk to him.

Q. Why not?

A. Because he -- All he -- Because if I respond to him and things don't go his way, he gonna start harassing me making threats and I just didn't wanna deal with it.

Q. Besides e-mails and besides this phone call that we're talking about today –

[DEFENSE COUNSEL]: Objection, Your Honor. Calls -- calling for -- Excuse me. The question is irrelevant. We're -- Counsel is getting into information -- past information. We're here about one phone call today, not about previous incidences.

We ask that you sustain the objection on relevance.

25

[PROSECUTOR]: Your Honor, I haven't even finished my question.

THE COURT: Okay. If you'll -- I need to hear the rest of the question before I can rule on your objection.
　　Go ahead, sir.

Q. [By [Prosecutor]] Besides phone calls – I'm sorry -- the phone call that we're talking about today, besides the e-mails that you've already stated, from the time the protective order was issued up until today, has the defendant contacted you?

A. Yes, he did.

Q. How so?

A. Through an inmate that -- I guess they both –

[DEFENSE COUNSEL]: Objection, Your Honor. Again, if we could approach. This goes to our motion in limine we had in our prehearing.

(RR2: 129-32). The jury was sent out of the courtroom and the parties discussed the issues. The prosecutor noted that Appellant used other people to communicate threats to harm Sheppard and her son. (RR2: 134). The defense objected that this was "hearsay and kind of irrelevant" and "this is inappropriate 404(b) thing, using other acts to show that he may have committed this act." (RR2: 134). The prosecutor responded that the case was not "just about a phone call" but was a violation of a protective order which was based on abuse and family violence. (RR2: 134). The prosecutor stated that he was not referring to anything before the protective order was issued, but was only talking about communication between the time of the issuance of the protective order and this trial. (RR2: 135).

26

The court noted that Sheppard's feelings of fear were not a legal part of what the State had to prove, so its relevancy was diminished. (RR2: 138). But the court also noted that the defense in opening statement had said the charges were fabricated, which made the evidence the prosecutor was trying to put in more relevant. (RR3: 138). The court stated that, considering what evidence had already been admitted, the prosecutor could ask "very generalized questions about other acts that Mr. Mavero has committed that support the fact that you're trying to establish that the phone call that he made on the alleged day was intentionally -- intentional or -- done intentionally or knowingly, that it wasn't essentially a mistake." (RR2: 141-42). The court ruled that the prosecutor could ask how Sheppard felt about the contact, but could not have her discuss what was said or done in "very specific context." (RR2: 142-43).

Defense counsel noted that the State had given her notice under Tex. R. Evid. 404(b), but it only included his prior offenses and not anything about phone calls or emails. (RR2: 143). The prosecutor stated that he had just learned about this evidence that morning before the trial started and that there was no physical evidence, such as the emails themselves, but merely the testimony from Sheppard about the emails. (RR2: 144-46). Defense counsel stated that if she had known there was going to be evidence under Tex. R. Evid. 404(b), she would have asked for a continuance so her investigator could look into it. (RR2: 147-48).

27

When court resumed the next morning, the court noted that in an off-the-record discussion that morning, defense counsel had given the court notice of its intent to request a continuance to investigate the emails. (RR3: 7). The prosecutor announced that the State would "abandon any possible evidence that we introduce that may be 404(b) related." (RR3: 8). Defense counsel stated that abandoning the use of 404(b) evidence at that point "would not cure any wrongdoing" because some evidence had already come in before the jury. (RR3: 8). And if the defense cross-examined Sheppard on the issue, defense counsel felt she would reopen the door to the evidence. (RR3: 8).

Defense counsel and the prosecutor noted that "the emails that led up to the protective order" had been provided to the defense that morning. (RR3: 8-9,13). [These emails were not the ones that Sheppard had testified about that occurred after the protective order was obtained because the post-protective order emails were deleted after she received them. (RR2: 144-46).] The defense investigator outlined some authentication issues he had with the pre-protective order emails. (RR3: 10-12).

The prosecutor suggested that the correct remedy would be for the court to instruct the jury to disregard the evidence. (RR3: 13). Defense counsel noted that several of her objections were overruled regarding the phone calls and emails. (RR3: 14). Defense counsel asked for a limiting instruction in the jury charge and

a verbal instruction to the jury to disregard the evidence. (RR3: 15). The court denied the defense's request for the continuance that had been discussed earlier that morning. (RR3: 7,14). The court denied the request for an instruction to disregard, but granted the request for a limiting instruction. (RR3: 15).

When trial resumed, the prosecutor questioned Sheppard about how she felt when she received the phone call from Appellant. (RR3: 18). Sheppard then testified about talking to the VA police about the phone call. (RR3: 19). The prosecutor never asked about any emails or other threatening phone calls she may have received from Appellant. (RR3: 18-23,32-34).

**Most of the alleged error was not preserved for review.**

TEX. R. APP. P. 33.1(a) provides that, in order to present a complaint for appellate review, the record must show that "the complaint was made to the trial court by a timely request, objection or motion" that "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint," and that the court ruled on the request, objection, or motion. An issue is not preserved for review when the ground alleged on appeal does not comport with the trial objection. *Yazdchi v. State*, 428 S.W.3d 831, 844 (Tex. Crim. App. 2014); *Harris v. State*, 784 S.W.2d 5, 17 (Tex. Crim. App. 1989). The reason for the contemporaneous objection rule is to inform the trial court of the basis of the objection and give the court or the

29

opposing party an opportunity to correct the error or remove the basis of the objection. *Purtell v. State*, 761 S.W.2d 360, 365 (Tex. Crim. App. 1988). The reviewing court may not reverse the trial court's decision on a legal theory not presented to the trial court by the complaining party. *Hailey v. State,* 87 S.W.3d 118, 121-122 (Tex. Crim. App. 2002).

Appellant's argument throughout his point of error is based on the mistaken premise that he timely objected at trial under Tex. R. Evid. 404(b). (Appellant's brief at 41,43-44,51-52). In fact, Appellant made only one objection to one answer on the grounds of improper character evidence while Sheppard was testifying (RR2: 130) and, as discussed below, that objection was properly overruled. Appellant did not make an objection that mentioned Rule 404(b) until after the evidence had been admitted (RR2: 129-32) and the jury had been removed from the courtroom (RR2: 133), when defense counsel stated, "I feel like this is inappropriate 404(b) thing, using other acts to show that he may have committed this act." (RR2: 134). The other three objections that Appellant made while Sheppard was testifying about Appellant's phone calls and emails were all based only on relevance. One relevance objection was sustained (RR2: 130), one was overruled (RR2: 131), and the court did not rule on the third relevance objection because the prosecutor had not finished his question when Appellant objected (RR2: 131-32). Because only one objection to one answer was made on the

grounds of improper character evidence, and Appellant's other trial objections do not comport with his complaint on appeal, any error has been waived as to all but one question.

## Appellant's 404(b) objection was not timely.

The State further submits that any error under Rule 404(b) was waived by Appellant's failure to make the objection to all but one question at the time the testimony was offered into evidence. To preserve a complaint for appellate review, the complaining party must make a timely, specific objection. Tex. R. Evid. 103(a)(1); Tex. R. App. P. 33.1(a)(1)(A); *Neal v. State,* 256 S.W.3d 264, 279 (Tex. Crim. App. 2008). To be adequately specific, the complaint must let the trial judge know what he wants and why he is entitled to it. *Neal,* 256 S.W.3d at 279.

As discussed in the previous section, while the evidence was being presented and admitted into evidence, Appellant objected three times on the grounds of relevance, and once on the ground of "improper character evidence" regarding one question. Therefore, only the objections he actually presented to the evidence may be considered.

## The Evidence was Properly Admitted.

A trial court should be allowed the discretion to exclude or admit evidence before the jury, and an appellate court should not set aside the trial court's ruling absent a showing on the record that the trial court abused its discretion by acting in

31

an arbitrary and unreasonable manner. *Montgomery v. State*, 810 S.W.2d 372, 379-380 (Tex. Crim. App. 1990). There should be reluctance on the part of an appellate court to reverse trial court decisions that admit or exclude evidence. *Id.* at 378. The fact that a trial judge may decide a matter within his discretion in a different manner than an appellate judge does not demonstrate that an abuse of discretion has occurred. *Id.* at 380. The reviewing court should not reverse a trial judge whose ruling was within the "zone of reasonable disagreement." *Green v. State*, 934 S.W.2d 92, 101-102 (Tex. Crim. App. 1996); *Montgomery*, 810 S.W.2d at 391.

Tex. R. Evid. 401 provides that "relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the case more probable or less probable. The evidence "need not by itself prove or disprove a particular fact to be relevant; it is sufficient if the evidence provides a small nudge toward proving or disproving some fact of consequence." *Montgomery*, 810 S.W.2d at 376. Tex. R. Evid. 402 provides that all relevant evidence is admissible, except as otherwise provided by statute, constitution, or the rules of evidence. Tex. R. Evid. 403 then provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."

32

It is the burden of the opponent of the evidence to not only demonstrate the negative attributes of the evidence but also to show a that these negative attributes "*substantially outweigh*" any probative value. *Montgomery*, 810 S.W.2d at 377 (emphasis in original). Evidence is prejudicial only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence." *Id.* at 378. An appellate court must presume that relevant evidence is more probative than prejudicial. *Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997).

The only timely and specific objection Appellant made that referred to Rule 404(b) was made when the prosecutor asked Sheppard if Appellant had communicated with her several times before. Appellant objected that this was improper character evidence and the court overruled the objection. (RR2: 129-30). The State submits that the court properly overruled the objection because the prosecutor was trying to establish why Sheppard believed that the phone call Appellant made to her office was not an accidental call. *See* Rule 404(b) (evidence of extraneous offense may be admissible to prove "absence of mistake or accident."). The fact that Appellant had communicated with Sheppard before was extremely relevant and probative to the issue of whether this call in question was accidental. Moreover, because the question merely established that Appellant had communicated with Sheppard before, the evidence was not unfairly prejudicial,

confusing or misleading to the jury, or cumulative of other evidence. Therefore, the trial court properly overruled the objection.

Although Appellant complains about the evidence regarding other phone calls and emails, Appellant did not object to most of the evidence that was admitted about the emails and other phone calls. Appellant made no objection when Sheppard testified to the following:

- Appellant called her just to harass and upset her. (RR2: 129).
- If Sheppard did not respond to Appellant's emails, he would call her. (RR2: 129).
- Sheppard did not go to the authorities every time he contacted her because he used fake email addresses and it would be hard for her to prove it was him contacting her. (RR2: 130).
- Sheppard knew it was Appellant contacting her because of the things he said and the way he talked. (RR3: 130).
- Sheppard did not want to talk to Appellant because if she responded and "things don't go his way," then he would start harassing her and making threats. (RR2: 130-31).
- In addition to the emails and the phone call that was the subject of this trial, Appellant had contacted Sheppard since the protective order was issued. (RR2: 132).

Because Appellant made no objection to the evidence above being admitted, he cannot now complain about it on appeal. With only two exceptions, Texas law requires a party to continue to object each time inadmissible evidence is offered; the two exceptions require counsel to either: (1) obtain a running objection; or (2) request a hearing outside the presence of the jury. *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991). When the two exceptions are not in place, in

order to preserve error, the objecting party must continue to object each time the objectionable evidence is offered. *Id.*

When the prosecutor asked how else Appellant had contacted her, Sheppard responded, "Through an inmate that - - I guess they both - -." (RR2: 132). At that pointed, Appellant objected and approached the bench, and then the jury was removed from the courtroom. (RR2: 132-33). The court overruled Appellant's objection to evidence of the personal information contained in the email that made Sheppard know Appellant was contacting her, such as him calling her "crazy" and saying, "hey, crazy, call me, please" and begging her to reply. (RR2: 131). These two issues are the only issues about which Appellant has preserved error. Admission of the evidence that Appellant called her "crazy" and begged her to call him is certainly not harmful, especially in light of the other evidence to which Appellant did not object, which included evidence that Appellant had contacted her in violation of the protective order and that if Appellant did not get his way, he would harass and threaten her.

The only other evidence that came in was Sheppard's partial answer to a question, in which she mentioned that Appellant had contacted her "Through an inmate . . . ." (RR2: 132). Since Sheppard did not finish her sentence, however, no harmful evidence was introduced. Therefore, no error occurred.

**Any error was harmless.**

Alternatively, even if this Court determines that error occurred, any error in overruling the objections was harmless. Because Appellant is complaining about the admission of evidence, the proper standard of review is that for nonconstitutional errors provided in Tex. R. App. P. 44.2(b), which requires that any "error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). A substantial right is affected when the error had a "substantial and injurious" effect or influence in determining the jury's verdict or when the error leaves one in grave doubt about whether it had such an effect. *Montez v. State*, 975 S.W.2d 370, 373 (Tex. App. – Dallas 1998, no pet.). "A substantial right is not affected and the error is harmless if, after reviewing the entire record, the appellate court determines that the error did not influence, or had only a slight influence, on the trial outcome." *Id*. Thus, under Rule 44.2(b), unless the error had a substantial and injurious effect or influence in determining the verdict, the error will not constitute reversible error. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). When conducting a harm analysis under Rule 44.2(b), overwhelming evidence of a defendant's guilt is a factor to be considered. *Motilla v. State*, 78 S.W.3d 352, 357 (Tex. Crim. App. 2002).

In the instant case, the complained-of testimony regarding Appellant calling Sheppard "crazy," begging her to call him, and contacting her through an inmate was not substantial or injurious. There was plenty of other evidence admitted without objection that showed Appellant contacted Sheppard repeatedly. Sheppard testified that Appellant called her just to harass and upset her and he would call her if she did not respond to his emails. (RR2: 129). Sheppard knew it was Appellant contacting her because of the things he said and the way he talked. (RR2: 130). Sheppard did not want to talk to Appellant because if she responded and "things don't go his way," then he would start harassing her and making threats. (RR2: 131). Sheppard also stated that in addition to the emails, as well as the phone call that was the subject of this trial, Appellant had contacted Sheppard other times since the protective order was issued. (RR2: 132).

Because of the evidence that was admitted without objection showing that Appellant contacted Sheppard after the protective order was issued, that she did not want to communicate with him, and that he made threats and harassed Sheppard, the other testimony that was admitted over objection would not have had a substantial effect on the verdict. Therefore, any error was harmless. This point is without merit and should be overruled.

## RESPONSE TO POINT 5

**THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN OVERRULING APPELLANT'S MOTION FOR MISTRIAL FOR LACK OF NOTICE OF CERTAIN EXTRANEOUS OFFENSES.**

## RESPONSE TO POINT 6

**THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN OVERRULING APPELLANT'S REQUEST FOR A JURY INSTRUCTION TO DISREGARD FOR LACK OF NOTICE OF CERTAIN ALLEGED EXTRANEOUS OFFENSES.**

In Points 5 and 6, Appellant claims that the court abused its discretion in overruling his motion for mistrial and his request for a jury instruction regarding certain alleged extraneous offenses. The State responds that the court did not abuse its discretion in denying either Appellant's motion for mistrial or his request for an instruction to disregard.

**Relevant Facts**

As discussed in the previous Response, Sheppard testified about various phone calls and emails she received from Appellant after the protective order was issued. When Appellant objected to Sheppard's reference to "an inmate" and referenced a pretrial motion in limine, the court sent the jury out of the courtroom and the parties discussed the issues. (RR2: 132-33). The prosecutor noted that Appellant used other people to communicate threats to harm Sheppard and her son. (RR2: 134). The defense objected that this was "hearsay and kind of irrelevant"

38

and "this is inappropriate 404(b) thing, using other acts to show that he may have committed this act." (RR2: 134). The prosecutor responded that the case was not "just about a phone call" but was a violation of a protective order that was based on abuse and family violence. (RR2: 134). The prosecutor stated that he was not referring to anything before the protective order was issued, but was only talking about communication between the time of the issuance of the protective order and this trial. (RR2: 135).

The court noted that Sheppard's feelings of fear were not a legal part of what the State had to prove, so its relevancy was diminished. (RR2: 138). But the court also noted that the defense in opening statement had said the charges were fabricated, which made the evidence the prosecutor was trying to put in more relevant. (RR2: 138). The court stated that, considering what evidence had already been admitted, the prosecutor could ask "very generalized questions about other acts that Mr. Mavero has committed that support the fact that you're trying to establish that the phone call that he made on the alleged day was intentionally -- intentional or -- done intentionally or knowingly, that it wasn't essentially a mistake." (RR2: 141-42). The court ruled that the prosecutor could ask how Sheppard felt about the contact, but could not have her discuss what was said or done in "very specific context." (RR2: 142-43).

Defense counsel noted that the State had given her notice under Tex. R. Evid. 404(b), but it had only included his prior offenses and not anything about phone calls or emails. (RR2: 143). The prosecutor stated that he had just learned about the other phone calls and email evidence that morning before the trial started. (RR2: 144). The prosecutor also stated that there was no physical evidence, such as the emails themselves, but merely the testimony from Sheppard about the emails. (RR2: 144-46). The prosecutor stated the Sheppard deleted the email messages "out of fear because they were threats" and she hung up the phone out of fear because she felt threatened. (RR2: 146).

Defense counsel stated that if she had known there was going to be evidence under Tex. R. Evid. 404(b), she would have asked for a continuance so her investigator could look into it. (RR2: 147-48). Defense counsel stated that she did not file a discovery motion or ask the court to rule on it because the prosecutor told her to fill out a discovery request form. (RR2: 148-49). When the court asked defense counsel what would be the remedy that would assist the defense, counsel asked for a mistrial "so that we could go see" and go through call logs. (RR2: 149). Counsel had also previously discussed asking her investigator to look for the emails. (RR2: 146). The court denied the request for a mistrial. (RR2: 149).

When court resumed the next morning, the court noted that defense counsel had given the court notice of its intent to ask for a continuance "to investigate these

40

e-mails and personal visits that the State brought up." (RR3: 7). The court in summarizing the evidence referred to personal visits (RR3: 6-7) made by Appellant to Sheppard. Defense counsel also stated that Sheppard had testified about visits. (RR3: 10,14). Appellant's brief also references these personal visits. (Appellant's brief at 60). During the testimony about which Appellant complains, however, there was no evidence that Appellant made any personal visits to Sheppard. Sheppard only testified about Appellant contacting her through emails and phone calls. (RR2: 129-32). Sheppard made one reference to Appellant contacting her through an inmate, but it was only a partial sentence and did not specify how the inmate contacted her. (RR2: 132). There was no testimony about Appellant or anyone of his behalf making personal visits to Sheppard. (RR2: 129-32).

The prosecutor announced that the State would "abandon any possible evidence that we introduce[d] that may be 404(b) related." (RR3: 8). Defense counsel stated that abandoning the use of 404(b) evidence at that point "would not cure any wrongdoing" because some evidence had already come in before the jury. (RR3: 8). And defense counsel stated that if the defense cross-examined Sheppard on the issue, the defense would reopen the door to the evidence. (RR3: 8).

Defense counsel and the prosecutor noted that "the emails that led up to the protective order" had been provided to the defense that morning. (RR3: 8-9,13). [These emails were not the ones that Sheppard had testified about that occurred

after the protective order was obtained because the post-protective order emails were deleted after she received them. (RR2: 144-46).] The defense investigator outlined some authentication issues he had with the pre-protective order emails. (RR3: 10-12).

The prosecutor suggested that the correct remedy would be for the court to instruct the jury to disregard the evidence. (RR3: 13). Defense counsel noted that several of her objections were overruled regarding the phone calls and emails. (RR3: 14). Defense counsel asked for a limiting instruction in the jury charge and a verbal instruction to the jury to disregard the evidence. (RR3: 15). The court denied the defense's request for a continuance. (RR3: 14). The court denied the request to give an instruction to disregard to the jury when the jury returned to the courtroom. (RR3: 15). The court granted the request for a limiting instruction in the jury charge. (RR3: 15). The jury charge did, in fact, contain a limiting instruction, which stated the following:

> You are instructed that if there is any testimony before you in this case regarding the Defendant's having committed offenses other than the offense alleged against him in the Information in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the Defendant committed such other offenses, in any were committed, and even then you may only consider the same in determining the intent of the Defendant, if any, in connection with the offense, if any, alleged against him in the Information in this case, and for no other purpose.

(CR1: 26).

When trial resumed, the prosecutor questioned Sheppard about how she felt when she received the phone call from Appellant. (RR3: 18). Sheppard then testified about talking to the VA police about the phone call. (RR3: 19). The prosecutor never again asked about any emails or other threatening phone calls she may have received from Appellant. (RR3: 18-23,32-34).

**Appellant's motion for mistrial was properly denied.**

A mistrial is an extreme remedy for prejudicial events during the trial process. *Edwards v. State*, 106 S.W.3d 833, 836 (Tex. App. – Dallas 2003, pet. ref'd). The asking of an improper question will seldom call for a mistrial because, in most cases, any harm can be cured by an instruction to disregard. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). A mistrial should be used to halt trial proceedings only when error is so prejudicial that expenditure of further time would be wasteful and futile. *Id*. Thus, mistrials should be granted only when an objectionable event is so emotionally inflammatory that curative instructions are not likely to prevent the jury from being unfairly prejudiced against the defendant. *Edwards*, 106 S.W.3d at 836. The jury is presumed to follow the trial court's instruction to disregard improperly admitted evidence in the absence of evidence indicating the members of the jury failed to do so. *State v. Boyd*, 202 S.W.3d 393, 402 (Tex. App. – Dallas 2006, pet. ref'd). A trial court's denial of a mistrial is

43

reviewed under an abuse of discretion standard. *Hawkins v. State,* 135 S.W.3d 72, 76 (Tex. Crim. App. 2004); *Ladd*, 3 S.W.3d at 567.

To determine whether a given error necessitates a mistrial, the reviewing court must examine the particular facts of the case. *Ladd*, 3 S.W.3d at 567. A mistrial is required only when the impropriety is clearly calculated to inflame the minds of the jury and is of such a character as to suggest the impossibility of withdrawing the impression produced on the minds of the jury. *Hinojosa v. State,* 4 S.W.3d 240, 253 (Tex. Crim. App. 1999). In *Hawkins*, the Court of Criminal Appeals stated the following:

> . . . the question of whether a mistrial should have been granted involves most, if not all, of the same considerations that attend a harm analysis. A mistrial is the trial court's remedy for improper conduct that is "so prejudicial that expenditure of further time and expense would be wasteful and futile." [citation omitted]. In effect, the trial court conducts an appellate function: determining whether improper conduct is so harmful that the case must be redone. Of course, the harm analysis is conducted in light of the trial court's curative instruction. Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required.

*Hawkins,* 135 S.W.3d at 77.

In the instant case, Appellant asked for a mistrial "so that we could go see" because defense counsel wanted her investigator to go through call logs and see if he could find the emails in question. (RR2: 146,149). As discussed above, however, the purpose of a mistrial is to remedy extreme circumstances involving

44

incurable prejudice, not to allow one party to go look for evidence. Therefore, the mistrial was properly denied.

Moreover, the evidence that was admitted over Appellant's objections consisted only of testimony that Appellant called Sheppard "crazy," begged her to call him, and contacted her through an inmate. (RR2: 130-32). Appellant did not object to evidence that he contacted Sheppard after the protective order was issued, that she did not want to communicate with him, and that he made threats and harassed Sheppard. (RR2: 129-32). The evidence to which Appellant objected was not extremely prejudicial in light of the evidence to which he did not object. Therefore, the court did not abuse its discretion in denying Appellant's request for a mistrial.

**Request for instruction to disregard was properly denied.**

Appellant argues that without a curative instruction, the jury was likely to consider the uncharged extraneous offense evidence for character conformity in violation of 404(b). (Appellant's brief at 66). Even if the jury did consider the uncharged evidence of Appellant contacting Sheppard by phone and email, however, most of the responsibility for that consideration lies with Appellant. As discussed in the State's Response to Point 4 and incorporated herein, Appellant did not object at all to a majority of Sheppard's testimony regarding the emails and other phone calls. Thus, any error was waived regarding the testimony to which he

did not object. Therefore, the court should not have given any instruction regarding that testimony other than the limiting instruction that was contained in the jury charge.

Appellant did not timely object on 404(b) grounds to anything other than Sheppard's reference to an inmate contacting her and whether Appellant had communicated with her several times before. (RR2: 129-33). Sheppard testified over an objection that was not ruled upon to the fact that Appellant had contacted her in addition to the emails and the phone call that was the subject of the charged offense. (RR2: 131-32). Appellant's objection was overruled as to how Sheppard knew that it was Appellant emailing her, which Sheppard answered by saying no one else talked that way to her. (RR3: 131).

To this testimony, and *only* this testimony, the court could have given an instruction to disregard. The efficacy of an instruction to disregard, however, is based mainly upon the fact that it is given immediately after improper testimony. *See Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003); *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000) (holding that "a prompt instruction to disregard with cure error associated with an improper question and answer."). In the instant case, Appellant did not even request the instruction to disregard until the next morning after Sheppard had testified. The record shows the court recessed at 3:34 p.m. on July 8, 2014, after Sheppard testified about the

46

events in question. (RR2: 1,129-32,150). Court resumed at 10:04 a.m. on July 9, 2014 and Appellant first requested an instruction to disregard that morning. (RR3: 1,6,15). Thus, the jury first heard the testimony in question more than 18 hours before Appellant requested an instruction to disregard.

Tex. R. App. P. 33.1(a) provides that, in order to present a complaint for appellate review, the record must show that "the complaint was made to the trial court by a timely request, objection or motion" that "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint," and that the court ruled on the request, objection, or motion. This rule ensures that trial courts are provided an opportunity to correct their own mistakes at the most convenient and appropriate time, which is when the mistakes are alleged to have been made. *Hull v. State*, 67 S.W.3d 215, 217 (Tex. Crim. App. 2002).

By waiting until the morning after Sheppard's testimony to request an instruction to disregard, Appellant did not allow the trial court an appropriate time to correct any mistake in the admission of the testimony. The court could reasonably have determined that no instruction to disregard would remove the evidence from the jury's mind. Moreover, mentioning the specific evidence in question more than 18 hours after the jury first heard it would only have

47

emphasized it. Therefore, the trial court properly denied Appellant's request.

Point 6 is without merit and should be overruled.

## PRAYER

The State prays that this Honorable Court will affirm the judgment of the trial court.

Respectfully submitted,

*Karen R. Wise*

SUSAN HAWK
Criminal District Attorney
Dallas County, Texas

KAREN R. WISE
Assistant District Attorney
State Bar No. 21810200
Frank Crowley Courts Building
133 N. Riverfront Blvd., LB-19
Dallas, Texas 75207-4399
(214) 653-3637
(214) 653-3643 *fax*

## CERTIFICATE OF SERVICE AND WORD-COUNT COMPLIANCE

I hereby certify that a true copy of the foregoing brief was served on Jeff P. Buchwald, attorney for Appellant, by sending an electronic communication to Buchwald7@msn.com, on October 30, 2015. I further certify that this document contains 12,491 words, inclusive of all contents.

*Karen R. Wise*

KAREN R. WISE

48